Revised April 30, 2007

**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 25, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 07-30132
Summary Calendar

ELMIRA PRESTON; HOWARD PRESTON; ROSE LEFRANCE PRESTON;
SHERYL PRESTON; DEBORAH MAZIE; ET AL.,

Plaintiffs-Appellees,

versus

TENET HEALTHSYSTEM MEMORIAL MEDICAL CENTER, INC.,
doing business as Memorial Medical Center,

Defendant-Appellee,

versus

LIFECARE HOSPITAL OF NEW ORLEANS LLC, doing business as Lifecare Hospital;
LIFECARE MANAGEMENT SERVICES, L.L.C.,

Defendants-Appellants.

Consolidated with

No. 07-30160
Summary Calendar

CHERYL WEEMS, Individually and on behalf of her deceased mother,
Veola Mosby, and on behalf of all others similarly situated,

Plaintiff-Appellee,

versus

TOURO INFIRMARY,

                                                    Defendant-Appellee,

SHONO, INC. doing business as Specialty Hospital of New Orleans,

                                                    Defendant-Appellant.

_____

On Petition for Permission to Appeal from the
United States District Court for the
Eastern District of Louisiana

_____

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Tenet Health Systems Memorial Medical Center d/b/a Memorial Medical Center ("Memorial") moved to remand this class action lawsuit to state court under the "local controversy" exception of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The district court granted the motion to remand, and LifeCare Management Services, L.L.C., and LifeCare Hospitals of New Orleans, L.L.C. (collectively "LifeCare"), timely appealed the order. We affirm the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Preston represents a putative class of patients and the relatives of deceased and allegedly injured patients hospitalized at Memorial when Hurricane Katrina made landfall in New Orleans, Louisiana. Memorial owned and operated the hospital, and LifeCare leased the seventh floor of

2

the facility for an acute care center. On October 6, 2005, Preston brought suit against Memorial in the Civil District Court for the Parish of Orleans. Preston asserted claims for negligence and intentional misconduct, "reverse patient dumping" under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395(dd), and involuntary euthanization. Preston alleged that Memorial failed to design and maintain the premises in a manner that avoided loss of power in the building. Preston further alleged that Memorial and LifeCare failed to develop and implement an evacuation plan for the patients. According to the petition, Memorial's and LifeCare's failure to maintain the premises and timely evacuate the facility resulted in the deaths and injuries of hospitalized patients. Preston named LifeCare in the Fifth Supplemental Amended Petition for Damages, seeking to certify the following class of persons:

> All patients of Memorial and LifeCare who sustained injuries including death or personal injury as a result of the insufficient design, inspection and/or maintenance of LifeCare and/or Memorial's back-up electrical system, its failure to implement its evacuation plan and/or its emergency preparedness plan and/or its failure to have a plan which would have facilitated the safe transfer of patients out of harm's way, and its failure to have a plan of care for patients in the event of a power outage in the wake of Hurricane Katrina within the property owned by Memorial and leased and/or operated by LifeCare on or about the time period of August 26, 2005 through and including August 29, 2005 and thereafter, and all persons who sustained personal injury as a result of the deaths or personal injuries to patients of LifeCare and Memorial . . . .

On June 26, 2006, LifeCare filed a timely notice of removal. Memorial never consented to removal from the state court. Shortly thereafter, LifeCare amended its removal notice to assert the following grounds: the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1); the Multiparty, Multiforum Trial Jurisdiction Act, 28 U.S.C. § 1369; the Class Action Fairness Act of 2005, 28 U.S.C. § 1369; and federal question jurisdiction, 28 U.S.C. § 1331. Preston filed a motion to remand under the local controversy exception of CAFA. On August 22, 2006, the district court conducted a non-evidentiary hearing on the remand motion. The court declined to

3

rule on the motion at the hearing but instead ordered the parties to present additional evidence regarding the citizenship of the class members. Preston withdrew the motion to remand prior to the deadline for submitting additional proof. Nevertheless, on November 13, 2006, Memorial filed a memorandum supporting remand and adopting Preston's withdrawn motion. As a result, Memorial effectively resurrected Preston's motion to remand. On November 21, 2006, the district court remanded the lawsuit to state court under the local controversy exception, home state exception, and the discretionary jurisdiction provision. The district court also declined to exercise federal jurisdiction under the alternative grounds asserted in LifeCare's amended notice of removal. LifeCare filed a timely petition for appeal pursuant to 28 U.S.C. § 1453. On February 5, 2007, this court granted permission to appeal.[1] LifeCare only contests the district court's citizenship findings under CAFA's exceptions to federal jurisdiction.

## II. STANDARD OF REVIEW

We review the district court's factual findings as to the citizenship of the parties for clear error. *Acridge v. Evangelical Lutheran Good Samaritan Soc.*, 334 F.3d 444, 450 (5th Cir. 2003) (The district court's "analysis of the facts and circumstances" relevant to determining domicile is reviewed under the clearly erroneous standard.); *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996) ("Nevertheless, in practice, the district court's determination of domicile is reviewed on appeal

_____

[1]On February 14, 2007, shortly after we granted permission to appeal in *Preston*, another panel of this court entered an order that granted a named defendant permission to appeal a remand order in *Weems v. Touro*, No. 07-30160. These two class action lawsuits involve nearly identical factual backgrounds; however, the parties and procedural histories are different. On appeal, both Appellants ask the court to determine whether the parties moving for remand introduced sufficient evidence to satisfy the citizenship requirement under CAFA's exceptions to federal jurisdiction. Due to the factual similarities and the legal issues of first impression, the court consolidated these two appeals. Accordingly, we timely enter two separate judgments.

as a question of fact; it will be upheld unless 'clearly erroneous.'"); *Carrasco-Favela v. Immigration & Naturalization Serv.*, 563 F.2d 1220, 1222 (5th Cir. 1977) ("Whether petitioner abandoned this domicile . . . is mainly a question of fact turning on petitioner's intent to remain indefinitely . . . or a lack of intent to make his home elsewhere."); *Welsh v. Am. Surety Co. of N.Y.*, 186 F.2d 16, 18 (5th Cir. 1951) ("The question is always one of compound fact and law . . . [and] we are not warranted in setting aside his findings and conclusions unless clearly erroneous."). *But see Evans v. Walter Indus., Inc.* 449 F.3d 1159, 1161-62 (11th Cir. 2006) (conducting a de novo review of the district court's citizenship determination under CAFA's local controversy exception). A finding of fact is clearly erroneous only when "although there may be evidence to support it, the reviewing court on the entire [record] is left with the definite and firm conviction that a mistake has been committed." *Campos v. City of Baytown, Tex.*, 840 F.2d 1240, 1243 (5th Cir.1988) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)).

The standard of review for a district court's remand under the discretionary provision constitutes an issue of first impression. We review the district court's remand order for abuse of discretion. In determining the burden of proof to show citizenship under the local controversy exception, courts treating the question in the first instance looked to 28 U.S.C. § 1441(a), the general removal statute. *Frazier v. Pioneer Ams. L.L.C.*, 455 F.3d 542 (5th Cir. 2006) (determining that plaintiffs had the burden of proof to show citizenship based on analogy to the general removal statute); *Hart v. FedEx Ground Packaging Sys., Inc.*, 457 F.3d 675 (7th Cir. 2006) (same); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159 (11th Cir. 2006) (same).

In the traditional removal context, a district court "shall have original jurisdiction" over lawsuits involving a federal question or lawsuits satisfying statutory diversity and amount in

5

controversy requirements. 28 U.S.C. §§ 1331 & 1332(a). On the other hand, the district courts "may decline to exercise supplemental jurisdiction" over a prescribed list of state and federal law claims in certain circumstances. 28 U.S.C. § 1367(c). In interpreting the discretionary language of supplemental jurisdiction, this court reviews an order to remand pursuant to § 1367(c) for abuse of discretion. *Smith v. Amedisys, Inc.*, 298 F.3d 434 (5th Cir. 2002) (upholding the district court's remand of case based on existence of novel and complex issues of state law); *Welch v. Thompson*, 20 F.3d 636 (5th Cir. 1994) (upholding district court's remand of case after dismissal of federal claims); *Kaplan v. Clear Lake City Water Auth.*, 794 F.2d 1059 (5th Cir. 1986) (same); *Jones v. Fitch*, 665 F.2d 586 (5th Cir. 1982) (upholding district court's remand of case based on the presence of a substantial state law claim).

Similarly, the local controversy and home state exceptions read that the "district courts *shall* decline to exercise jurisdiction," while the discretionary provision provides that the district court "*may* in the interests of justice and looking at the totality of the circumstances" decline to exercise jurisdiction. *Compare* §§ 1332(2) & (4) *with* § 1332(3). LifeCare cogently argues that the local controversy and home state exceptions should be construed narrowly and resolved in favor of federal jurisdiction based on the "shall decline to exercise jurisdiction" language, which represents the classic formulation for abstention. Under the discretionary jurisdiction provision, however, Congress permitted the district court greater latitude to remand class actions to state court. As with supplemental jurisdiction under 28 U.S.C. § 1367(c), the district court does not wield unfettered discretion over whether to remand a case; instead Congress provided a list of factors to guide the district court's consideration.

### III. DISCUSSION

6

A.     Statutory Background

Congress enacted CAFA to expand federal jurisdiction over interstate class action lawsuits of national interest.   CAFA contains a basic jurisdictional test for removal, which requires the removing defendant to prove minimal diversity and an aggregated amount in controversy of $5,000,000 or more. § 1332(d).   CAFA eliminates the standard requirements of unanimous consent among the defendants and the one-year removal deadline.   § 1453(b).   The district court can decline jurisdiction under three provisions: (1) the home state exception, § 1332(d)(4)(B); (2) the local controversy exception, § 1332(d)(4)(A); and (3) discretionary jurisdiction, § 1332(d)(3).

Pursuant to the local controversy exception, the district court "shall decline to exercise jurisdiction" when the class action meets the following criteria:

> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (II) at least 1 defendant is a defendant–
>
>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>
>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>
>> (cc) who is a citizen of the State in which the action was originally filed; and
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

7

§ 1332(4)(A). The home state exception provides that the district court "shall decline to exercise jurisdiction" when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." § 1332(4)(B).

Under the discretionary jurisdiction provision, a "district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction . . . over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed . . . ." The district court must consider these factors:

> (A) whether the claims asserted involve matters of national or interstate interest;
>
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
>
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
>
> (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;
>
> (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and
>
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

§ 1332(d)(3).

B.    Discretionary Jurisdiction Provision

8

The district court remanded this class action lawsuit to state court under all three carve-outs to federal jurisdiction: the local controversy exception, the home state exception, and the discretionary jurisdiction provision. Each CAFA exception requires the court to make an objective factual finding regarding the percentage of class members that were citizens of Louisiana at the time of filing the class petition. The local controversy and home state exceptions to federal jurisdiction are separate and distinct statutory provisions with a common requirement–greater than "two-thirds of the members of all proposed plaintiff classes in the aggregate [must be] citizens of the State in which the action was originally filed." LifeCare concedes that this class action lawsuit satisfies the distinguishable remaining elements of the two exceptions. *Compare Serrano v. 180 Connect, Inc.*, 478 F.3d 1018 (9th Cir. 2007) (declining to reach the "primary defendants" issue under the home state exception), *with Frazier v. Pioneer Ams. L.L.C.*, 455 F.3d 542 (5th Cir. 2006) (holding that the state entity named as a defendant does not qualify as a citizen of the state in which suit was filed under the local controversy exception).

Under CAFA's discretionary jurisdiction provision, the citizenship requirement lowers to require that "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate . . . are citizens of the State in which the action was originally filed . . . ." § 1332(d)(3). The movants must satisfy the citizenship requirement as a prerequisite to the district court weighing the additional statutory factors enumerated to guide the court's remand determination. The same legal principles apply to the discretionary jurisdiction provision as apply to the local controversy and home state exceptions. Despite the burden to prove a lesser percentage of class members were citizens of Louisiana, which party bears the

burden of proof and the sufficiency of evidence necessary to satisfy the citizenship requirements remains consistent throughout either analysis.

Congress crafted CAFA to exclude only a narrow category of truly localized controversies, and § 1332(d)(3) provides a discretionary vehicle for district courts to ferret out the "controversy that uniquely affects a particular locality to the exclusion of all others." *Evans*, 449 F.3d at 1164. After careful review of the record, the discretionary jurisdiction provision proves to be a particularly well-suited framework for considering the interconnections between the underlying facts giving rise to the alleged legal claims and the extenuating circumstances affecting this preliminary jurisdictional determination.[2] The district court determined that a distinct nexus exists between the forum of Louisiana, the Defendants, and the proposed class. We observe, more specifically, that Preston alleges that LifeCare and Memorial, citizens of Louisiana, committed acts in Louisiana causing injuries and deaths to patients hospitalized in New Orleans, Louisiana, when Hurricane Katrina made landfall. The claims asserted in the petition involve issues of negligence governed by state law. Memorial does not contest that the instant lawsuit fulfills the threshold requirements for removal under CAFA, i.e. the requisite number of proposed class members, minimal diversity, and the necessary aggregate amount in controversy. *See* § 1332(d)(2). Accordingly, we limit our review to whether Memorial

---

[2]LifeCare argues that the district court violated its due process rights by not giving LifeCare notice of any intention to remand the action pursuant to the discretionary jurisdiction provision. We find this argument wholly unpersuasive. As a bedrock principle of federal jurisdiction, a court may sua sponte review whether subject matter jurisdiction exists in a case. Moreover, the remand order does not deprive LifeCare of a judicial forum to defend against the alleged claims but merely designates this lawsuit as more appropriately prosecuted under the jurisdiction of the state courts.

10

presented sufficient evidence to show that at least one-third of the putative class members were citizens of Louisiana at the time that the suit was filed.

## 1.    *Burden of Proof*

We now consider which party bears the burden of proof under the discretionary jurisdiction provision.  Under CAFA, the moving party on the remand motion, not the defendant seeking federal jurisdiction, bears the burden to establish the domicile of at least one-third of the class members at the time of filing the lawsuit. *Frazier*, 455 F.3d at 546 ("[P]laintiffs have the burden to show the applicability of the §§ 1332(d)(3)-(5) exceptions when jurisdiction turns on their application.").  The plaintiffs in this case, however, withdrew their motion to remand before the court entered judgment.  The district court reasoned that "whether or not the Motion is viable in view of the Plaintiffs' withdrawal is of no consequence since the Court must sua sponte address the issue and remand the action back to state court if it determines at any time that it lacks subject mater jurisdiction."  (emphasis and citations omitted).  We agree that the moving party's decision to withdraw the motion does not render the district court unable to review its subject matter jurisdiction, but we offer an additional reason for this conclusion.

LifeCare argues that the district court remanded the case despite any "extant" motion to remand.  Under CAFA, however, both plaintiffs and non-consenting defendants may move to remand the class action to state court because Congress eliminated the standard  requirement that defendants must unanimously consent to federal jurisdiction.[3]  Therefore, in this instance, we

---

[3]"A class action may be removed to a district court of the United States in accordance with section 1446 . . . except that such action may be removed by any defendant without the consent of all defendants." § 1453(b).  For purposes of remand, Congress concluded that "Section 1447 shall apply to any removal of a case under this section," which does not designate whether only plaintiffs or defendants may move to remand a case to state court. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject

adopt the broader statement that "once federal jurisdiction has been established under [CAFA], the *objecting* party bears the burden of proof as to the applicability of any express statutory exception under §§ 1332(d)(4)(A) and (B) [the local controversy and home state exceptions]." *Serrano*, 478 F.3d at 1024 (9th Cir. 2007) (emphasis added).

In *Frazier*, the court reasoned that the "longstanding § 1441(a) doctrine placing the burden on plaintiffs to show exceptions to jurisdiction buttresses the clear congressional intent to do the same with CAFA. This result is supported by the reality that plaintiffs are better positioned than defendants to carry this burden." 455 F.3d at 545. Our holding extends *Frazier* and reconciles CAFA's elimination of the typical full-consent requirement for removal with the facts presented in this appeal, wherein the plaintiffs withdrew their motion to remand and a defendant resurrected the motion. In the district court proceedings, Memorial did not seek removal pursuant to the discretionary jurisdiction provision; instead, the district court determined sua sponte that the discretionary provision supported its order to remand the class action back to state court. The differing percentage requirements between the two provisions, however, do not vitiate the burden to prove citizenship by a preponderance of the evidence. Accordingly, Memorial, the only party moving for remand, must show that the exceptions to federal jurisdiction apply in this class action despite its position as a named defendant.

2.      *Evidentiary Standard for Proving Citizenship*

Memorial must prove that greater than one-third of the putative class members were citizens of Louisiana at the time of filing the class action petition. 28 U.S.C. § 1332(d)(7)

matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

("Citizenship of the members of the proposed plaintiff classes shall be determined for purposes of paragraphs (2) through (6) as of the date of the filing of the complaint."). Preston filed this class action lawsuit on October 6, 2005; therefore, Memorial must prove citizenship as of this date. The parties contest the quantum of proof necessary to sustain the moving party's burden. Pursuant to well-settled principles of law, we hold that the party moving for remand under the CAFA exceptions to federal jurisdiction must prove the citizenship requirement by a preponderance of the evidence. *Welsh*, 186 F.2d at 17. This holding means that Memorial, as the movant, must demonstrate by a preponderance of the evidence that at least one-third of the putative class members were citizens of Louisiana.

In drafting CAFA, Congress explicitly and expressly delineated all deviations from traditional requirements of the general removal statute. For example, Congress eliminated the requirements for complete diversity and unanimous consent among the defendants to effectuate removal, such changes are clear from the plain language of the statute. Nothing in the statute suggests that Congress intended to impose a heightened burden of proof on parties attempting to remand a class action lawsuit to state court.

In the context of diversity jurisdiction, once a person establishes his domicile in a particular state, he simultaneously establishes his citizenship in the same state. *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954). Someone acquires a "domicile of origin" at birth, and this domicile presumptively continues unless rebutted with sufficient evidence of change. *Acridge*, 334 F.3d at 448 (citing *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)).

> [I]t is elementary that, to effect a change of one's legal domicile, two things are indispensable: First, residence in the new locality; and second, the intention to remain there. The change cannot be made, except facto et animo. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be animus to

13

change the prior domicile for another. Until the new one is acquired, the old one remains. . . . When challenged as here, the burden rested on him [the plaintiff] to show by a preponderance of the evidence that he was a citizen of that State.

*Welsh*, 186 F.2d at 17 (internal citations omitted); *see also Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638-39 (5th Cir. 2003). Absent specific language in the statute specifying a different evidentiary standard, we employ the time-honored standard routinely applied to the fundamental question of citizenship: proof by a preponderance of the evidence.

3. *Evidence Adduced to Prove Citizenship Requirement*

In an order dated August 22, 2006, the district court acknowledged that "limited discovery is required in order to determine whether it has jurisdiction, particularly in regards to Lifecare's claim that removal is proper under . . . [CAFA]." Accordingly, the district court ordered that Memorial "shall provide the Plaintiffs and Lifecare with patient information which will permit these parties to identify the patients who suffered personal injuries, including death, during the relevant period; these patients' addresses and phone numbers; as well as next of kin." In a second order, dated August 30, 2006, the district court required Memorial to "provide an affidavit of a Memorial representative attesting to the percentage of patients at issue, both deceased and living, with Louisiana addresses and percentage of those with addresses outside Louisiana." After the district court entered these orders, Preston moved to withdraw her motion to remand, and on September 26, 2006, the district court granted this motion.

a. Residency: Medical Records and Current Addresses

Both Memorial and LifeCare submitted evidence in response to the district court's order. Memorial's Medical Records Supervisor, Hal Rome, submitted two affidavits averring to the

14

residency of patients hospitalized when Hurricane Katrina made landfall. In the first affidavit, Rome avers to the following facts:

> That he has reviewed the complete list of all patients hospitalized at Memorial Medical Center at the time that Hurricane Katrina struck on August 29, 2005. That list contains a total of 256 patients. Of that total population of patients, the hospital's records show that 7 of those 256 patients, or 2.83% of the total, provided information to the hospital at the time they registered as patients indicating that they were residents of states other than Louisiana.

In his second affidavit, Rome produced a list showing that thirty-five patients died after the hurricane and records showing that two of the deceased patients gave out-of-state addresses. These same two patients were the only deceased persons that listed emergency contacts with telephone numbers outside of the New Orleans calling area.

LifeCare retained a private investigator, Robert Mazur, to trace the current mailing addresses of potential class members located throughout the country. LifeCare maintained that forty-nine of 146 persons identified as potential class members, more than one-third, currently reside outside of Louisiana. LifeCare's citizenship numbers include patients and surviving beneficiaries. In assessing these documents, the district court noted that "this information presents a valuable indication of the citizenship of the proposed class" but admonished LifeCare's failure to prove "residence and intent, both at the date the suit was filed." The district court reasoned that "LifeCare did not provide information regarding the length of time that these individuals have been residing outside of Louisiana . . . . Additionally, if these individuals were in fact displaced, LifeCare did not indicate whether these individuals intend to remain in their new state of residence."

We agree with the district court's treatment of LifeCare's rebuttal evidence. The pre-Katrina addresses in the medical records, however, only make a prima facie showing of

domicile, and citizenship requires residency and the intent to return or remain in the state. *Stine*, 213 F.2d at 448; *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). A party's residence alone does not establish domicile. *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974). We now turn to the evidence establishing intent, the second element of citizenship.

        b.      Intent: Statements from Potential Class Members

Memorial presented no evidence from its records to demonstrate that the hospitalized patients not only resided in Orleans Parish at the given addresses but also were domiciled in Louisiana at the time of Hurricane Katrina and at the time of filing suit. As the movant, it relies on the additional evidence filed by the plaintiffs. Preston submitted eight affidavits regarding the intent of potential class members to return to New Orleans, Louisiana, even though they currently resided in a different state. The named plaintiffs provided six of the eight affidavits. For example, the affidavit of Darlene Preston states her former address in New Orleans prior to Hurricane Katrina; her current address in Houston, Texas; and concludes by stating that "[s]he is planning on returning as soon as housing becomes available to her. She is a resident and domiciliary of and has always intended on returning to the City of New Orleans."[4] The affidavit of Aster Abraham, currently residing in Dallas, Texas, states that she and her husband

_____

[4]The affidavit of Darlene Preston reads as follows:

That she is the daughter of Leon Preston who was a patient at Memorial Medical Center in the City of New Orleans. Mr. Preston was a patient at Memorial Medical Center prior to Hurricane Katrina and remained in the hospital during the Hurricane where he died. She is a resident and domiciliary of the City of New Orleans, State of Louisiana living at 3619 St. Bernard Avenue, Apt. B, in New Orleans. She was forced to evacuate the City of New Orleans due to Hurricane Katrina. She is currently staying at 11315 Fondren Road, Apt. 116, Houston, Texas, 77035. She is planning on returning as soon as housing becomes available to her. She is a resident and domiciliary of and has always intended on returning to the City of New Orleans.

16

"completed repairs of the family home and she is returning July 2006." Similarly, Terry Gaines-Oden, currently residing in the Colony, Texas, avers that "she has every intention on returning as soon as her house is repaired." These affidavits unequivocally evince the intent of these plaintiffs to not change their domicile.

LifeCare contends that the affidavits should receive little weight under Circuit precedent because the documents show only the subjective intent of the parties. This court gives little weight to statements of intent evidence, however, only when the subjective evidence conflicts with the objective facts in the record. *Coury*, 85 F.3d at 251. LifeCare points to no objective evidence in the record indicating that the affidavits misrepresented the plaintiffs' intent of returning to New Orleans. To the contrary, in its reply brief to this court, LifeCare accepted the medical records and affidavits as undisputed facts.[5]

In addition to the medical records and affidavits, LifeCare suggests that Memorial should adduce evidence of citizenship in accordance with traditional diversity cases involving one defendant. Prior to CAFA, the removing parties only needed to show citizenship with respect to the named plaintiffs. § 1332(d)(3)-(4). "The factors [considered by the district court] may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Acridge*, 334 F.3d at 448 (quoting *Coury*, 85 F.3d at 251). This suggestion not only affects the moving party but suggests that at this threshold stage of the case, the district court must engage in the

---

[5]The opening paragraph of LifeCare's reply brief declares that "[t]he issue is not resolving competing versions of discrete facts. . . . The question is whether these averments–undisputed and taken as true–permit the court to conclude that two-thirds of the members of the proposed class were Louisiana citizens when the suit was filed."

17

arduous task of examining the domicile of every proposed class member before ruling on the citizenship requirement. We decline to adopt such a heightened burden of proof considering the far greater number of plaintiffs involved in a class action as compared to the traditional diversity case. From a practical standpoint, class action lawsuits may become "totally unworkable in a diversity case if the citizenship of all members of the class, many of them unknown, had to be considered." CHARLES ALAN WRIGHT, LAW OF FEDERAL COURTS § 72, at 521 (5th ed. 1994). The requisite showing under CAFA prompts this court to reconcile congressional intent, our precedent for determining citizenship, and judicial economy. Thus, the evidentiary standard for establishing the domicile of more than one hundred plaintiffs must be based on practicality and reasonableness.

"The [district] court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." *Coury*, 85 F.3d at 249 (citing *Ray v. Bird & Son & Asset Realization Co.*, 519 F.2d 1081 (5th Cir. 1975)). Preston admitted the statements of eight potential class members. The district court concluded that the affidavits "suggest that at least some displaced proposed class members intend to return to New Orleans in the near future. Each of these individuals state that they lived in New Orleans at the time of the hurricane, but were forced to evacuate to another state. However, they continue to have every intention of returning to the New Orleans area."

In the wake of Hurricane Katrina, and the compounding effects of the breached levees, nearly eighty percent of New Orleans was engulfed in flood waters rising over twenty feet in lower-lying areas. These cataclysmic events damaged, destroyed, or rendered inaccessible

18

approximately 850,000 housing units.[6]  Left with no other option, authorities vested with the responsibility of public safety forced people to evacuate New Orleans in any available mode of transportation.  The underlying facts of this lawsuit and the reason for the parties contesting the citizenship issue emanate from a common origin of circumstances: the unmerciful devastation caused by Hurricane Katrina.  As an inevitable result of the property damage and evacuation, a great majority of the city's population either temporarily or permanently relocated to habitable areas of Louisiana and other states.  In this case, the aftermath of Hurricane Katrina and attendant flooding serves as a common precipitating factor for the mass relocation pertinent to our citizenship determination and threads together the proposed class and many other citizens. The sheer magnitude of this shared catalyst formed an adequate backdrop for the district court's extrapolation that the reasons offered by the affiants for not immediately returning home, i.e. repairing the family home, finding gainful employment, and waiting for the availability of housing units, were probably representative of many other proposed class members.

The Fifth Amended Petition for Damages defines a circumscribed class that includes "all patients of Memorial and LifeCare who sustained injuries . . . and all persons who sustained personal injury as a result of the deaths or personal injuries to patients of LifeCare and Memorial."  The eight affidavits in and of themselves are not dispositive proof that at least one-third of the defined putative class were citizens of Louisiana at the time in which the suit was filed.  The uncontroverted affidavits of eight beneficiaries stating an intent to return to New Orleans, the emergency contact phone numbers of the deceased patients, and the uncontroverted

---

[6]Pursuant to Fed. R. Evid. 201(b), this court may take judicial notice of facts "generally known within the territorial jurisdiction of the trial court " or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

data gathered from the medical records, however, permitted the district court to make a reasonable assumption that at least one-third of the class members were citizens of Louisiana during the relevant time period regardless of the rebuttal evidence placed in the record. Upon reviewing the medical records, Rome averred that only seven of the 256 patients hospitalized at the time of Hurricane Katrina gave permanent addresses outside the state of Louisiana, which equates to 2.83% of the total number of hospitalized patients. The putative class cannot extend significantly beyond this finite number of persons because in this case, we are not presented with an immeasurably amorphous proposed class. *See, e.g., Evans*, 449 F.3d at 1166 (The plaintiffs defined a class of property owners and persons suffering personal injury as the result of harmful toxins released by over eighteen defendant-manufacturers spanning a time period of approximately eighty-five years.); *Schwartz v. Comcast Corp.*, 2006 WL 487915 (E.D. Pa. 2006) (The defined class included plaintiffs aggrieved by a cable company's alleged failure to provide high speed internet service to various businesses and residents in a multi-state area.). Thus, the discrete number of patients hospitalized at Memorial when Hurricane Katrina made landfall constitutes a reasonable estimate of the total class for determining the preliminary jurisdictional question of citizenship.

Although the actual number of patients and beneficiaries remains an open question, the unequivocal affidavits of eight beneficiaries in conjunction with the residency information gleaned from the emergency contact data of the deceased patients gave the district court a reasonable indication as to the citizenship of these unaccounted for persons. LifeCare identified the current residences of only 146 potential class members to rebut the medical records and affiavits, but LifeCare's evidence fails to demonstrate an intent to change domicile by any of the

identified persons. Even though eight affidavits may constitute a small number of statements outside the unique convergence of facts presented in this case, we find that here, the affidavits amplify the court's carefully reasoned conclusion about the probable citizenship of the proposed class of hospitalized patients and their beneficiaries. Therefore, based on the record as a whole, the district court made a reasonable assumption that at least one-third of the class were Louisiana citizens at the time of filing the lawsuit on October 6, 2005, less than two months after the storm hit New Orleans. We do not find the district court's findings of fact clearly erroneous.

> c. Presumption of Continuing Domicile

Memorial argues that based on the presumption of continuing domicile, LifeCare bears the burden to show that the displaced Hurricane Katrina victims possess no intention of returning to New Orleans, Louisiana. LifeCare contends that its evidence rebuts any presumption that a person residing in the New Orleans area at the time of Hurricane Katrina continued to reside there when suit was filed. Moreover, LifeCare proposes that the presumption is inapplicable in this case due to the massive relocation of over half of the city's population. We find this argument unpersuasive, and further, we find no precedential support for the notion that a forced relocation (especially, a mandatory evacuation prompted by a natural disaster) destroys the presumption of continued domicile. *See Delinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996) ("Since domicile is a voluntary status, a forcible change in a person's state of residence does not alter his domicile; hence the domicile of a prisoner before he was imprisoned is presumed to remain his domicile while he is in prison. . . . [T]he presumption articulated in *Sullivan* is rebuttable, but on this meager record it has not been rebutted.") (internal citations and quotes omitted); *Fort Knox Transit v. Humphrey*, 151 F.2d 602, 602 (6th Cir. 1945) ("[U]pon the whole record and in the absence of any challenge to the jurisdiction, the plaintiff's residence in Ohio is

21

prima facie evidence of his citizenship in that state and is not overthrown by residence in Kentucky as a member of the Armed Forces of the United States, and there being no substantial evidence of voluntary relinquishment of an Ohio domicile.").

"There is a presumption in favor of [a person's] continuing domicile which requires the party seeking to show a change in domicile to come forward with enough evidence to that effect . . . ." *Coury*, 85 F.3d at 251. The law of continuing domicile gains special significance in light of the natural disaster forming the factual basis of this appeal. In a recent case analyzing the citizenship requirement of the local controversy exception, a district court recognized that "[g]iven the forced evacuation for several months from several south Louisiana parishes as a result of Katrina, it is reasonable to assume that residents of these parishes might change their addresses in the immediate aftermath of the storm without changing their domiciles." *Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364 (E.D. La. 2007) (denying the motion to remand on other grounds under the local controversy exception). The court described its conclusion as a "common-sense presumption" applied to a "closed-end class." *Id.*

We agree with the notion that the damage and destruction wrought by Hurricane Katrina warrants the court's incorporation of common-sense as part of the calculus in determining the citizenship of the class members. While cognizant that the patient addresses provided by Memorial do not definitively reflect the patients' domicile at the time of filing suit, as required under traditional diversity standards, we also consider the common genesis of the historically unprecedented exodus from New Orleans in our assessment of the citizenship issue. In light of the vast post-Katrina diaspora and the undisputably slow revitalization in parts of New Orleans, it is unreasonable to demand precise empirical evidence of citizenship in a class action lawsuit

22

filed less than sixty days after the hurricane and related flooding. Many Hurricane Katrina victims may intend to return home yet are still dispersed throughout Louisiana and other states for reasons beyond their control, such as not having shelter and employment in the New Orleans area. Therefore, we find the presumption of continuing domicile relevant in this case.

> d. Population Survey Data

On appeal, LifeCare cites to a 2006 Louisiana Health and Population Survey Report, conducted by the Louisiana Public Health Institute on behalf of the Louisiana Department of Health and Hospitals. The survey estimated that the 2004 population of 444,515 persons living in Orleans Parish decreased dramatically to 191,139 persons after Hurricane Katrina. Based on surveys returned during June and October 2006, the Louisiana Department of Health and Hospitals published the report on January 17, 2007.

We find this survey to be much too broad to rebut the presumed citizenship of a class member. First, the survey data represents only an initial analysis conducted less than a year after Hurricane Katrina. Second, the published data only accounts for population decreases in the Orleans Parish area, while CAFA's citizenship requirement looks to citizenship in the state. Third, the submitted survey gives a disclaimer that "a comprehensive final report for all parishes will be produced when the project is completed and all parish specific reports are released." This statement clearly indicates that the project remains a work-in-progress and lends little insight into determining the number of class members no longer located in Louisiana due to the forced evacuation after Hurricane Katrina. Accordingly, we deem the census data as non-probative on whether one-third of the class members were domiciled in Louisiana at the time of filing suit.

> 4. *Determination of Class Size*

23

LifeCare argues that Memorial fails to establish the number of people composing the proposed class. Arguably, without knowing the number of persons in the class, the court cannot determine whether one-third of the class members are citizens of Louisiana. Citing *Frazier* and *Evans*, LifeCare asserts that the statute requires concrete proof of the number of class members as a prerequisite to ruling on the citizenship requirement. In *Frazier*, the court rejected plaintiff's argument, under the local controversy exception, that the Department of Environmental Quality was a citizen of Louisiana by citing the "long-settled [rule] that a state has no citizenship for § 1332(a) diversity purposes." 455 F.3d at 547. Thus, the court never reached the statutory citizenship requirement.

In *Evans*, plaintiffs filed a class action lawsuit in Alabama state court on behalf of a class of persons allegedly injured by the actions of eighteen named defendants and fictitious defendants. 449 F.3d at 1161. The plaintiffs alleged that the defendants operated manufacturing facilities in the Anniston, Alabama area. *Id.* In their petition, plaintiffs claimed that defendants released various waste substances over an approximately eighty-five-year period, resulting in property damage and personal injury. *Id.* The attorney introduced evidence of interviews with over 10,000 potential plaintiffs and determined that 5,200 persons qualified for class membership. *Id.* at 1166. Of the potential class members, over ninety percent resided in Alabama; therefore, the court could conceivably extrapolate that two-thirds of the entire class were citizens of the state. *Id.*

The Eleventh Circuit found this evidence insufficient to prove the citizenship requirement under the local controversy exception. The *Evans* court highlighted deficiencies in the evidence, reasoning that the affidavit of the class attorney provided no information "about

24

how she selected the 10,118 people who were considered potential plaintiffs. . . . [W]e know nothing about the percentage of the total class represented by the 10,118 people on which plaintiff's evidence depends." 449 F.3d at 1166. In connecting the evidence to the class definition, the Eleventh Circuit concluded that "the class, as defined in the complaint, is extremely broad, extending over an 84-year period. We do not know if Smith made any effort to estimate the number of people with claims who no longer live in Alabama. . . . We have no way of knowing what percentage of the plaintiff class are Alabama citizens." *Id.* Notwithstanding the apparently cumbersome investigative work completed by counsel, the Eleventh Circuit "conclude[d] that the evidence adduced by the plaintiffs wholly fails to present a *credible estimate* of the percentage of the plaintiff class who are citizens of Alabama." *Id.* (emphasis added)

Here, we conclude that the submitted evidence provides an adequate basis for the district court to make a credible estimate of the class members domiciled in Louisiana. CAFA requires the district court to make a threshold jurisdictional determination. Thus, the district court must balance the need for discovery while not unduly delaying the resolution of this preliminary question. The statute compensates for the inability to conduct an in-depth fact finding mission by permitting defendants to remove the case to federal court at any point in the litigation. § 1453(b) (eliminating 28 U.S.C. § 1446(b)'s one-year time limit).

As defined, this proposed class includes patients hospitalized at the time of Hurricane Katrina and their beneficiaries asserting damages for personal injury, wrongful death, and derivative claims. Memorial bears an affirmative burden to establish the domicile of at least one-third of the class members under the discretionary jurisdiction provision, which logically requires determining the size of the putative class. The pre-Katrina addresses in the medical

25

records partially satisfy this burden but provide no basis for determining the total number of potential class members. The district court, however, considered the "addresses and phone numbers of those patients who died at Memorial within the relevant time period, as well as the phone numbers of the patients' emergency contacts listed on their medical forms."

At this preliminary stage, it is unnecessary for the district court to permit exhaustive discovery capable of determining the exact class size to an empirical certainty. Even though a party should take care in defining the putative class, the specificity argued for by LifeCare more appropriately occurs during class certification. Under Fed. R. Civ. P. 23, the district court must "evaluate with rigor the claims, defenses, relevant facts and applicable substantive law in order to make a meaningful determination of the certification issues." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005). At the certification stage, the plaintiff must provide evidence or a reasonable estimate of purported class members. Then, the class size weighs in the district court's certification calculus. *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 421 (5th Cir. 2004); *James v. City of Dallas, Tex.*, 254 F.3d 551 (5th Cir. 2001), *cert. denied*, 534 U.S. 1113 (2002). Moreover, we are not presented with a situation wherein the district court stymied the parties' efforts to marshal evidence and conduct discovery. Neither Memorial nor LifeCare contends that the district court thwarted their ability to gather relevant information by evidentiary rulings; to the contrary, the district court encouraged the introduction of evidence through two orders of the court.

The defined class clearly involves a finite group of persons: patients hospitalized in Memorial Medical Center at the time that Hurricane Katrina made landfall. We would probably invoke a different analysis if, for example, the class definition included persons trapped in the

26

Ninth Ward in the hours and days following Hurricane Katrina and the levee breach. Under this hypothetical, the ability to quantify such a class, much less parse renters from property owners and other relevant complications, would require more evidence than before the court in this appeal. Here, we know the number of patients. We also know the patients' names, emergency contact information for the deceased patients, and the discrete time period of the episodic event giving rise to the litigation. Moreover, we are not dealing with a class of patients receiving medical care from a national hospital that regularly services out-of-state patients. Memorial Medical Center is a local health care facility primarily servicing the local citizens of New Orleans, as evinced by the local addresses and phone numbers found in the medical records. Only seven patients hospitalized at the time of Hurricane Katrina listed an out-of-state address on their medical forms. The proposed class in this case contemplates a concretely defined group as opposed to the abstractly defined classes ruled on in *Evans* and discussed in the above hypothetical.

Unlike *Evans*, the crux of this case revolves around a narrowly defined class and claims stemming from a localized chain of events. In aligning these circumstances and the adduced evidence, we are not in the position of having to put a square peg in a round hole. Instead, we are dealing with the congruence of fitted pieces. Keeping in mind the measurable bounds of the proposed class, we conclude that the district court made a reasonable inference regarding the temporary dual residency of the displaced Louisiana citizens at issue in this case. The record reflects that the plaintiffs defined a reasonably confined class and the district court, based on a preponderance of the evidence, made a credible estimate that at least one-third of the class were citizens of Louisiana at the time of filing suit.

     5.       *Statutory Factors for Determining the Interest of Justice*

### a. Whether Claims Involve National or Interstate Interest

LifeCare argues that the evacuation of medical and other facilities during disasters such as Hurricane Katrina is an issue of national concern. This broad statement could swallow the rule, however, as many events isolated to one area at any particular time may reoccur in another geographic location in the future. Under CAFA, the terms local and national connote whether the interests of justice would be violated by a state court exercising jurisdiction over a large number of out-of-state citizens and applying the laws of other states. Just because the nation takes interest in Hurricane Katrina does not mean that the legal claims at issue in this class action lawsuit qualify as national or interstate interest. The factual scenario presented in this class action involves two Louisiana businesses operating a local hospital during a natural disaster destroying New Orleans and the compounded devastation of the local levee breach. The evacuation plans, building maintenance, and emergency care procedures are the work product and property of these local entities. Moreover, the district court denied any federal basis for jurisdiction after reviewing the class action petition, and neither party appealed this ruling. For these reasons, although the nation may still be watching the ever-evolving after effects of Hurricane Katrina, this class action lawsuit does not affect national interest as contemplated under the statute.

### b. Whether Claims Are Governed by Louisiana Law and Whether the Class Action Was Pleaded to Avoid Federal Jurisdiction

The plaintiffs in this case assert a variety of negligence claims based on the delayed evacuation of patients from Memorial Medical Center after Hurricane Katrina made landfall. The majority of the claims asserted in the class petition involve negligence issues governed

28

under Louisiana law. Specifically, Memorial and LifeCare argue that the Louisiana Medical Malpractice Act, L.S.A. R.S. 40:1299.41, et seq., governs the plaintiffs' causes of action.

LifeCare unsuccessfully attempted to remove this case under § 1331, asserting that the plaintiffs' Emergency Medical Treatment and Active Labor Act ("EMTALA") claim constituted a federal question, which mandated original federal jurisdiction over the lawsuit. The district court concluded that "a viable cause of action under federal law does not exist for "reverse patient dumping" and thus does not confer jurisdiction under 28 U.S.C. § 1331. . . . Even if it could be argued that federal jurisdiction may exist for the EMTALA claim, the Court finds that the state-law claims predominate over the case in its entirety and thus remand under 28 U.S.C. § 1441(c) is appropriate." Neither party disputes the district court's holding on this issue in their appeal to this court. Moreover, the record does not indicate that the plaintiffs' intentionally pleaded the case in a manner to avoid federal jurisdiction and neither defendant asserts such an allegation. Accordingly, the class action lawsuit as pleaded satisfies these two requirements.

c.      Whether a Distinct Nexus Exists between the Forum and the Class
         Members, Alleged Harm, and the Defendants

The conduct alleged in the class action petition as causing the deaths and injuries of patients hospitalized at Memorial and LifeCare occurred at the defendants' medical facilities in New Orleans, Louisiana. Memorial owned and operated the hospital, and LifeCare leased one floor of the hospital for the operation of an acute care center. Both Memorial and LifeCare are Louisiana corporations organized under the laws of the state, and based on the medical records, nearly ninety-seven percent of the patients permanently resided in Louisiana at the time of admission to these health centers. In light of the localized events giving rise to the alleged negligent conduct and the undisputed residency and citizenship information of the patients and

29

the healthcare providers, we conclude that a distinct nexus exists between the forum of Louisiana and the class members, alleged harm, and the defendants.

### d. State Citizenship of the Class Members

For the reasons thoroughly discussed in the citizenship analysis, we conclude that the "number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States." Based on the record, an overwhelming number of patients permanently resided in New Orleans, Louisiana, and the vast majority of the emergency contact phone numbers listed for the deceased patients have the New Orleans area code. After the hurricane, many New Orleans residents were forced to relocate to surrounding areas in Louisiana and other states. As evinced through the affidavits, however, citizens of Louisiana are hindered from immediately acting on their desires to move back home due to employment, housing, and other related issues. Undoubtedly, some evacuees hold no intention of returning to Louisiana but surely are dispersed throughout the nation as opposed to one other state. For these reasons, we determine that the proposed class meets this requirement.

### e. Whether Similar Class Actions Filed in Preceding Three-Year Period

We find no evidence, and neither party raises the issue, of a class action being filed during the three-year period preceding the filing of this class action asserting the same or similar claims on behalf of the same or other persons.

## V. CONCLUSION

We recognize that Congress crafted CAFA to exclude only a narrow category of truly localized controversies, and the exceptions provide a statutory vehicle for the district courts to ferret out the "controversy that uniquely affects a particular locality to the exclusion of all others." *Evans*, 449 F.3d at 1164. This particular Hurricane Katrina case symbolizes a quintessential example of Congress' intent to carve-out exceptions to CAFA's expansive grant of federal jurisdiction when our courts confront a truly localized controversy. Based on the medical records, affidavits, and attending factual circumstances, we determine that the district court did not clearly err in finding that one-third of the class members were citizens of Louisiana at the time of filing suit. Accordingly, we affirm the district court's judgment. Further, we deny Memorial's and Preston's motion to vacate this court's extension order as applied to this case and motion to dismiss this appeal.