[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

No. 06-11974
_____

D. C. Docket No. 05-01017-CV-1-KOB

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 22, 2006
THOMAS K. KAHN
CLERK

ISAIAH EVANS,
LILLIAN FOMBY,
IDA ADAMS,
CARTER ADAMS,
ALBERT MCCRORY
J. L. STRINGER,
ROSETTA BAILEY,
individuals on behalf of
themselves and a class of
persons similarly situated,

Plaintiffs-Appellees,

versus

WALTER INDUSTRIES, INC.,
f.k.a. U.S. Pipe and Foundry,
f.k.a. T.C. King Pipe and Fittings Co.,
et al.,

Defendants,

MEADWESTVACO CORPORATION,
f.k.a. Standard Foundry,
f.k.a. Mead Corporation,
f.k.a. Woodward Iron,
f.k.a. Alabama Pipe Company,
f.k.a. Lynchburg Foundry,
UNITED DEFENSE LP,

SCIENTIFIC-ATLANTA, INC.,
f.k.a. Southern Tool,
HURON VALLEY STEEL CORPORATION,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

**(May 22, 2006)**

Before TJOFLAT, ANDERSON and DUBINA, Circuit Judges.

ANDERSON, Circuit Judge:

Appellants United Defense LP, MeadWestvaco Corporation, Scientific-Atlanta, Inc., and Huron Valley Steel Corporation challenge the district court's decision to remand this case to the Alabama state court. Appellants argue that this case belongs in federal court under the recently-enacted Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified in scattered sections of 28 U.S.C.), and because the plaintiffs fraudulently joined non-diverse defendants in order to evade federal jurisdiction. We hold that the federal district court has jurisdiction over this case under CAFA. We need not reach the issue of fraudulent misjoinder.

2

# I. BACKGROUND

On April 8, 2005, plaintiffs filed this case in the Circuit Court of Calhoun County, Alabama, on behalf of a class of people who were allegedly injured by the actions of 18 named defendants and a number of fictitious defendants. The plaintiffs allege that the defendants operated manufacturing facilities in the Anniston, Alabama area. Plaintiffs allege both property damage and personal injury that they attribute to defendants' release of various waste substances over an approximately 85-year period. Four of the defendants removed this case to federal court under CAFA, which expanded federal jurisdiction for class actions. Defendants' Notice of Removal also contained a footnote that stated that defendants believed that plaintiffs may have improperly joined non-diverse defendants.

Plaintiffs filed a motion to remand the case to state court. Plaintiffs' sole argument for remand is that the case fell within CAFA's "local controversy" exception to federal jurisdiction. Plaintiffs argued that their case was a local controversy because more than two-thirds of the plaintiff class were Alabama citizens and at least one Alabama defendant, U.S. Pipe, was a "significant" defendant within the meaning of CAFA. Plaintiffs proffered the affidavits of two of their attorneys to support their claim. The district court agreed that this case fell

3

within CAFA's local controversy exception, and remanded the case to state court.[1]

The four removing defendants appeal the district court's ruling.


## II. STANDARD OF REVIEW

The district court's decision to remand is reviewed de novo. Brown v. Snow, 440 F.3d 1259, 1262 (11th Cir. 2006) ("We review questions of subject matter jurisdiction de novo.").


## III. ANALYSIS

A. The Sixty-Day Rule

The relevant provisions of CAFA provide:

(c) Review of remand orders.–

(1) In general.– Section 1447 shall apply to any removal of a case under this section, except that notwithstanding section 1447(d), a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not less than 7 days after entry of the order.

(2) Time period for judgment.– If the court of appeals accepts an appeal under paragraph (1), the court shall complete all action on such

---

[1]The district court also held that the defendants had waived their claim of fraudulent misjoinder by failing to raise the claim clearly in the defendants' Notice of Removal. As noted, we need not reach issues related to fraudulent misjoinder.

appeal, including rendering judgment, not later than 60 days after the date on which such appeal was filed, unless an extension is granted under paragraph (3).

(3) Extension of time period.– The court of appeals may grant an extension of the 60-day period described in paragraph (2) if–

> (A) all parties to the proceeding agree to such extension, for any period of time; or

> (B) such extension is for good cause shown and in the interests of justice, for a period not to exceed 10 days.

(4) Denial of appeal.– If a final judgment on the appeal under paragraph (1) is not issued before the end of the period described in paragraph (2), including any extension under paragraph (3), the appeal shall be denied.

28 U.S.C. § 1453(c). As a preliminary matter, we must determine whether the 60-day period begins to run from when the appellants filed their application for appeal, or from the date on which this court accepted the appeal. We hold that the 60-day period begins to run from the date when the court of appeals granted the appellants' application to appeal and thus filed the appeal.

Under CAFA, when a district court grants or denies remand to state court, a party may make an "application" for appeal to the court of appeals. 28 U.S.C. § 1453(c)(1). We believe that Congress' choice of language is significant. Section 1453(c)(1) provides for an "application" to the court of appeals, not a "notice of

appeal," within 7 days of the district court's remand order. Section 1453(c)(2) provides that the court of appeals shall complete all action 60 days after the date on which the "appeal was filed," not 60 days from the date on which the "application" was filed.

We also find it significant that review by the appeals court is clearly discretionary. <u>See</u> 28 U.S.C. § 1453(c)(1) ("a court of appeals <u>may</u> accept an appeal") (emphasis added). Thus, it is plausible to conclude that Congress contemplated the application of Fed. R. App. P. 5, which governs discretionary appeals. We conclude that a request for appeal under CAFA is subject to Fed. R. App. P. 5, entitled "Appeal by Permission." Rule 5(d)(2) provides: "A notice of appeal need not be filed. The date when the order granting permission to appeal is entered serves as the date of the notice of appeal for calculating time under these rules." Thus, there is no notice of appeal, and no appeal, until the court of appeals accepts the application, whence the appeal is deemed filed.

Accordingly, we hold that the "date on which such appeal was filed" is the date that the court of appeals accepts the appeal, and thus files the appeal. We agree with the resolution of every other court of appeals which has ruled on this issue. In this regard, we agree with the reasoning of <u>Patterson v. Dean Morris, LLP</u>, 444 F.3d 365 (5th Cir. 2006) and <u>Amalgamated Transit Union v. Laidlaw Transit</u>

6

Services., Inc., 435 F.3d 1140, 1145 (9th Cir. 2006). See also Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1093 (10th Cir. 2005).

In this case, the appellants filed their application for appeal on March 24, 2006 and this court granted their application on March 30, 2006. Therefore, this court's ruling is due within 60 days of March 30, 2006.

### B. CAFA and the Local Controversy Exception

#### 1. Legal Background

Congress enacted CAFA on February 18, 2005. Under CAFA, federal courts now have original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and there is minimal diversity (at least one plaintiff and one defendant are from different states). 28 U.S.C. § 1332(d)(2). CAFA, however, does have an exception to federal jurisdiction for cases that are truly local in nature. 28 U.S.C. § 1332(d)(4)(A).

In this case, the parties do not dispute that the controversy exceeds $5,000,000 and that there is minimal diversity. The issue before us is whether this case falls within CAFA's local controversy exception to federal jurisdiction. CAFA's local controversy exception provides:

(4) A district court shall decline to exercise jurisdiction under paragraph (2)–

(A)(i) over a class action in which –

    (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

    (II) at least 1 defendant is a defendant –

        (aa) from whom significant relief is sought by members of the plaintiff class;

        (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

        (cc) who is a citizen of the State in which the action was originally filed; and

    (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons;

28 U.S.C. § 1332(d).[2] CAFA's language favors federal jurisdiction over class actions and CAFA's legislative history suggests that Congress intended the local controversy exception to be a narrow one, with all doubts resolved "in favor of exercising jurisdiction over the case." S. Rep. No. 109-14 at 42.  The Senate Report on CAFA further states that the local controversy exception:

> is a narrow exception that was carefully drafted to ensure that it does not become a jurisdictional loophole. Thus, the Committee wishes to stress that in assessing whether each of these criteria is satisfied by a particular case, a federal court should bear in mind that the purpose of each of these criteria is to identify a truly local controversy – a

---

[2] The "local controversy" exception can be satisfied in either of two ways, as provided for respectively in 28 U.S.C. § 1332(d)(4)(A) or (B). The instant case involves only § 1332(d)(4)(A).

controversy that uniquely affects a particular locality to the exclusion of all others.

S. Rep. 109-14, at 39. The language and structure of CAFA itself indicates that Congress contemplated broad federal court jurisdiction, see e.g., Pub. L. No. 109-2, § 2(b)(2), 119 Stat. 4 ("providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction"), with only narrow exceptions. These notions are fully confirmed in the legislative history.

### 2. The Burden of Proof

The district court correctly determined that the plaintiffs bear the burden of establishing that they fall within CAFA's local controversy exception. CAFA allows for removal of class actions that meet certain minimal requirements. CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction. See Brill v. Countrywide Home Loans, Inc., 427 F.3d 446 (7th Cir. 2005). The parties do not dispute that the defendants have carried this burden and established that this action meets CAFA's basic requirements for removal to federal court – i.e., the controversy exceeds $5,000,000 and at least one plaintiff and one defendant are from different states (the minimal diversity requirement). However, when a party seeks to avail itself of an express statutory exception to federal jurisdiction granted

under CAFA, as in this case, we hold that the party seeking remand bears the burden of proof with regard to that exception. Cf. Breuer v. Jim's Concrete of Brevard, Inc., 538 U.S. 693, 697-98, 123 S. Ct. 1882, 1886, 155 L.Ed. 2d 923 (2003) (when a defendant removes a case under 28 U.S.C. § 1441(a), the burden is on a plaintiff to find an express exception to removal).[3]

In addition to Breuer, we find support for our decision in Castleberry v. Goldome Credit Corp., 408 F.3d 773 (11th Cir. 2005) and Lazuka v. Federal Deposit Insurance Corp., 931 F.2d 1530 (11th Cir. 1991). Both cases addressed the removal of actions involving the Federal Deposit Insurance Corporation (FDIC). The courts held that once the FDIC has established the prerequisites for removal under 12 U.S.C. § 1819(b)(2)(B) (i.e., the action was filed against the FDIC, and the FDIC removed the action within 90 days), then the burden of establishing the "state action" exception to federal jurisdiction shifts to the party objecting to removal. Castleberry, 408 F.3d at 785; Lazuka, 93 F.2d at 1538. As in our situation, the removing party bears the initial burden of establishing federal

_____

[3]Moreover, placing the burden of proof on the plaintiff in this situation is not only consistent with the statutory design, we believe it places the burden on the party most capable of bearing it. The local controversy exception will require evidence about the composition of the plaintiff class. The plaintiffs have defined the class and have better access to information about the scope and composition of that class. With respect to the "significant defendant" prong, both plaintiffs and defendants have access to relevant information. Defendants have better access to information about conduct by the defendants, but plaintiffs have better access to information about which plaintiffs are injured and their relationship to various defendants.

jurisdiction, but the objecting party bears the burden of proving an express statutory exception once federal jurisdiction has been established under the main provisions of the statute. The instant case is very similar, and the instant statute is very similar. Here 28 U.S.C. § 1332(d)(2) provides that federal courts shall have original jurisdiction of any civil action that is a class action satisfying the $5,000,000 amount in controversy and the minimal diversity requirements. Then § 1332(d)(4) sets out a very specific exception, the local controversy exception, to the jurisdiction otherwise provided in § 1332(d)(2). We conclude that the statutory framework at issue here is very similar to that involved in Castleberry and Lazuka. We hold that the plaintiffs here – the parties objecting to removal after the prerequisites for removal jurisdiction have been met – have the burden of proving the local controversy exception.

No other Circuit appears to have addressed the specific question of which party should bear the burden of proof on CAFA's local controversy exception. Two other Circuits have determined that CAFA does not upset the traditional rule that the removing party bears the burden of proof with regard to establishing federal court jurisdiction. Abrego Abrego v. Dow Chemical Co., 443 F.3d 676 (9th Cir. 2006); Brill, 427 F.3d 446. We agree with these courts that CAFA does not change the well-established rule that the removing party bears that burden of proof.

However, neither case involved a removing defendant who did satisfy its burden of proving the jurisdictional prerequisites, as the defendants here did when they proved that the amount in controversy exceeded $5,000,000 and that there was the necessary minimal diversity.[4] Neither case involved the local controversy exception.

Thus, we address as a question of first impression the issue of who bears the burden of proving the local controversy exception, once the removing defendants have proved the amount in controversy and the minimal diversity requirement, and thus have established federal court jurisdiction under § 1332(d)(2). For the reasons set out above, and by analogy to <u>Breuer</u>,123 S. Ct. at 1886, <u>Castleberry</u>, 408 F.3d at 784-85, and <u>Lazuka</u>, 91 F.3d at 1538, we hold that the plaintiffs bear the burden of proving the local controversy exception to the jurisdiction otherwise established.

We turn next to the merits of the local controversy exception as applied to this case. The parties dispute only two prongs of the local controversy exception: (1) whether more than two-thirds of the plaintiff class members are Alabama citizens; and (2) whether U.S. Pipe is a defendant from whom "significant relief" is

---

[4]<u>Brill</u> involved the determination of the $5,000,000 amount in controversy. 427 F.3d 446. <u>Abrego Abrego</u> involved whether the removing defendant could prove that it fell under the definition of a "mass action" to enable it to be deemed a class action for purposes of the CAFA removal provisions. 443 F.3d at 685-86.

sought and whose conduct forms a "significant basis" for the claims asserted by the plaintiffs. We conclude that plaintiffs have failed to prove either prong.

### 3.Citizenship of Plaintiff Class

To avail themselves of the local controversy exception, the plaintiffs must prove that greater than two-thirds of the proposed class members are Alabama citizens. In this case, the class includes:

> All property owners, lessees, licensees of properties on which the class defendants' [sic] deposited waste substances . . . and/or engaged in conduct or practices that allowed such substances and materials to migrate to and/or become located on the plaintiffs' property [and]

> All individuals who have come in contact . . . with any of the class defendants' deposited waste substances . . . who as a result of which has suffered personal injury or damages to their health, safety and welfare.

The complaint alleges harms from 18 defendants extending over a period of at least 85 years. The district court held that plaintiffs had adduced sufficient evidence that more than two-thirds of the plaintiff class are Alabama citizens. We disagree.

Plaintiffs have offered little proof that Alabama citizens comprise at least two-thirds of the plaintiff class. In order to prove that two-thirds of the plaintiff class are Alabama citizens, the plaintiffs submitted an affidavit by attorney Jennifer

13

Smith.[5] Smith avers that she reviewed or interviewed 10,118 potential plaintiffs. Of these, Smith determined that 5200 are members of the class. Of the 5200 class members, 4876 (93.8%) are Alabama residents. The plaintiffs argue that if 93.8% of the known plaintiffs are Alabama residents, then surely two-thirds of the entire plaintiff class are Alabama citizens.

We are not persuaded by plaintiffs' argument. Smith's affidavit tells us nothing about how she selected the 10,118 people who were considered "potential plaintiffs." We do not know if these 10,118 people represent both the property damage and personal injury classes. We do not know if Smith's method favored people currently living in Anniston over people who have left the area.[6] In short, we know nothing about the percentage of the total class represented by the 10,118 people on which plaintiffs' evidence depends. Moreover, the class, as defined in the complaint, is extremely broad, extending over an 85-year period. We do not know if Smith made any effort to estimate the number of people with claims who no longer live in Alabama.

_____

[5] In light of our resolution of this case, we need not reach issues relating to the admissibility of the evidence contained in the affidavits of the several attorneys participating in this case. The court's concerns in this regard were sufficiently expressed at oral argument.

[6] At oral argument, plaintiffs' counsel suggested that most of the potential plaintiffs had contacted the attorneys after hearing about the case through "word of mouth." It seems likely that people in Anniston are most likely to have heard about the case and contacted the attorneys. Potential plaintiffs outside of Anniston would seem to be under-represented in such a pool.

In sum, plaintiffs have not carried their burden of demonstrating that more than two-thirds of the plaintiff class are Alabama citizens. We understand that evidence of class citizenship might be difficult to produce in this case. That difficulty, however, is to a considerable degree a function of the composition of the class designed by plaintiffs. The local controversy exception is designed to ensure that state courts hear cases of a truly local nature. We have no way of knowing what percentage of the plaintiff class are Alabama citizens. We conclude that the evidence adduced by the plaintiffs wholly fails to present a credible estimate of the percentage of the plaintiff class who are citizens of Alabama. Accordingly, we hold that Plaintiffs have failed to prove that more than two-thirds of the plaintiff class are Alabama citizens.

### 4. Significant Defendant Test

We also hold that plaintiffs have failed to prove the "significant defendant" prong of the local controversy exception. In order to avail itself of the local controversy exception, pursuant to § 1332(d)(4)(A), the plaintiffs must prove that:

(II) at least 1 defendant is a defendant

    (aa) from whom significant relief is sought by members of the plaintiff class;
    (bb) whose alleged conduct forms a significant basis for the

claims asserted by the proposed plaintiff class; and
(cc) who is a citizen of the State in which the action was
originally filed.

28 U.S.C. § 1332(d)(4)(A)(i)(II). The district court held that U.S. Pipe, an Alabama corporation, was a significant defendant. We disagree and hold that plaintiffs have failed to prove that U.S. Pipe was a significant defendant as defined by CAFA.

Only a few courts have interpreted the local controversy exception to federal jurisdiction. At least two courts have held that a class seeks "significant relief" against a defendant when the relief sought against that defendant is a significant portion of the entire relief sought by the class. See Robinson v. Cheetah Transportation, 2006 WL 468820 (W.D. La. Feb. 27, 2006); Kearns v. Ford Motor Company, 2005 WL 3967998 (C.D. Cal. Nov. 21, 2005). As the Robinson court stated:

> whether a putative class seeks significant relief from an in-state defendant includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants and each defendant's ability to pay a potential judgment.

Robinson, 2006 WL 468820, at *3.

U.S. Pipe operated two metal casting facilities in Anniston during the relevant time period: a foundry located at 2101 W. 10th Street and another foundry at 1831 Front Street. The district court held that the plaintiffs sought significant

16

relief from U.S. Pipe because: (1) the complaint accused all the defendants of contamination in the Anniston area; and (2) U.S. Pipe owned and operated two foundry facilities during a substantial portion of the relevant time period.

Plaintiffs rely on their complaint and an attorney affidavit to establish that U.S. Pipe is a significant defendant. These documents, however, do not provide any enlightenment at all with respect to the significance of the relief that is sought against U.S. Pipe, or its comparative significance relative to the relief sought from the other 17 named co-defendants. In short, there is simply no evidence that U.S. Pipe was "significant" with respect to liability.

With respect to whether the conduct of U.S. Pipe "forms a significant basis" for the plaintiffs' claims, plaintiffs' evidence offers no insight into whether U.S. Pipe played a significant role in the alleged contamination, as opposed to a lesser role, or even a minimal role. The evidence does not indicate that a significant number or percentage of putative class members may have claims against U.S. Pipe, or indeed that any plaintiff has such a claim.[7]

_____

[7] The parties dispute whether the complaint can fairly be read to allege joint and several liability on the part of the defendants. We need not resolve that dispute. Even if the complaint does, and even if that satisfied the plaintiffs' burden with respect to the significant relief prong, § 1332(d)(4)(a)(i)(II)(aa), plaintiffs nevertheless have failed to satisfy § 1332(d)(4)(a)(i)(II)(bb) which requires that the "alleged conduct [of a significant defendant] form[] a significant basis for the claims asserted by the proposed class." In other words, the mere fact that relief might be sought against U.S. Pipe for the conduct of others (via joint liability) does not convert the conduct of others into conduct of U.S. Pipe so as to also satisfy the "significant basis"

17

Moreover, the limited facts before this court give rise to an inference that U.S. Pipe is not a significant defendant. The plaintiffs charge that U.S. Pipe has operated two facilities in Anniston: one on West 10th Street and the property at 1831 Front Street. The evidence shows that U.S. Pipe sold the 10th Street location in 1951 and believes that operations ceased considerably before 1951. The number of plaintiffs injured by pre-1951 foundry operations is very unlikely to be significant when compared to the class as a whole. U.S. Pipe did operate the Front Street location from 1961-2003. However, that site appears to be somewhat south of the area occupied by most of the class members identified by plaintiffs. Numerous other defendants have operations much nearer the largest concentration of identified class members, suggesting that U.S. Pipe's liability might not be significant compared to other defendants, and that the conduct of U.S. Pipe might not form a significant basis for the claims of the class. Plaintiffs do allege in their complaint that the defendants gave out foundry sand as fill dirt to local residents but, again, we have no evidence about whether U.S. Pipe has significant liability for distributing fill dirt, or that its conduct in this regard forms a significant basis for the claims of the class.

### IV. CONCLUSION

---

requirement.

18

For all the foregoing reasons, we hold that plaintiffs have failed to prove that their case belongs in state court under the local controversy exception to CAFA.[8] Because of our holding on this issue, we need not reach defendants' claim that the plaintiffs fraudulently misjoined defendants in their complaint.

**REVERSED and REMANDED.**

---

[8] Because plaintiffs have adduced little or no evidence in this case to satisfy two requirements for the local controversy exception, we need not address the kind or quantity of evidence that should be required.