[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 12, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-11143
Non-Argument Calendar

_____

D. C. Docket No. 08-00068-CV-CDL-3

ROSA L. THOMAS, Individually and
as Class representative for all
other similarly situated,

                                                    Plaintiff-Appellee,

versus

BANK OF AMERICA CORPORATION,
UNKNOWN PARTIES A, B, C, AND D,
Whose real and proper identities
are unknown at present,
FIA CARD SERVICES, N.A.,
d.b.a. FIA Card Services,

                                                    Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(June 12, 2009)

Before TJOFLAT, BIRCH and MARCUS, Circuit Judges.

PER CURIAM:

On June 2, 2008, Rosa L. Thomas filed a class action against Bank of America and FIA Card Services, a wholly-owned subsidiary of Bank of America, (jointly referred to as "Bank of America") in the Superior Court of Clarke County, Georgia. Thomas's complaint alleged that Bank of America committed insurance fraud in violation of O.C.G.A. § 33-31-7, committed unfair and deceptive acts in violation of O.C.G.A. § 33-6-4, acted in bad faith, and violated Georgia's Racketeer Influenced and Corrupt Organizations Act ("RICO"), O.C.G.A. § 16-14-4, by selling a bundled insurance product, known as Credit Protection Plus, to ineligible individuals.

The Credit Protection Plan provides differing benefits under the following separate contingencies: credit life insurance, credit accident and sickness insurance, involuntary unemployment insurance, hospitalization, and unpaid family leave of absence. Thomas's complaint alleged that the payment of benefits for most of the Credit Protection Plus components was contingent on the customer being employed for at least 30 hours per week and Bank of America sold the product to individuals, including herself, who worked less than 30 hours per week.

The complaint sought the recovery of "all premiums collected by [Bank of America] from Plaintiff and the class members . . . for various insurance products for which Plaintiff and the class members were ineligible to receive benefits thereunder," and, under RICO, sought treble damages and attorneys' fees.

The complaint defined Thomas's putative class alternatively, as "[a]ll Georgia residents who have (or had within the applicable statute of limitations) a credit account with Defendants and have enrolled in, and paid premiums for Defendants' 'Credit Protection Plus' products,"[1] or as:

> All Georgia residents who have (or had within the applicable statute of limitations) a credit account with Defendants and have enrolled in, and paid premiums for Defendants' "Credit Protection Plus" products who were ineligible for any of the bundled benefits at the time of purchase of Defendants' "Credit Protection Plus" products, or became ineligible for any of the bundled benefits within the time period in which said Georgia residents paid premiums to Defendants for coverage under the "Credit Protection Plus" products.[2]

---

[1] Thomas sought class certification under O.C.G.A. § 9-11-23(b)(2) which provides that

> An action may be maintained as a class action if the prerequisites of [numerosity, commonality, typicality, and representativeness] are satisfied, and, in addition . . . [t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

[2] O.C.G.A. § 9-11-23(b)(3) provides that an action may be maintained as a class action if the four prerequisites of class certification are met and a court finds that common issues of law or fact predominate over individual questions and a class action is superior to other available methods.

The complaint did not indicate the number of individuals in either of the proposed classes or the monetary amount of the recovery they were seeking.

On July 30, 2008, Bank of America filed a Notice of Removal to the United States District Court for the Middle District of Georgia, contending that jurisdiction was appropriate because the action qualified as a "mass action" under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). Under CAFA, to remove a mass action to federal court, a defendant must show: (1) an amount in controversy of an aggregate of $5,000,000 in claims: (2) minimal diversity; (3) numerosity involving monetary claims of 100 or more plaintiffs; and (4) commonality showing that the plaintiffs' claims involve common questions of law or fact. Lowery v. Alabama Power Co., 483 F.3d 1184, 1202-03 (11th Cir. 2007). Because Thomas provided no information relating to the amount in controversy or the number of plaintiffs in each class, Bank of America supplemented its Notice of Removal with a declaration that stated that "[f]rom October 23, 2006 through June 30, 2008, Defendant enrolled 77,787 customers and collected a total of $4,825,809 in fees from customers in Georgia for the Credit Protection Plus plan."[3] Bank of America

---

[3] The declaration was made by Robert Morris, Senior Operations Project Manager of Bank of America.

argued that because Thomas sought treble damages under the RICO statute and attorneys' fees, the amount in controversy clearly exceeded $5,000,000.

Thomas moved the district court to remand the case to the state court on the ground that Bank of America had not shown by a preponderance of the evidence that the amount in controversy exceeded $5,000,000; thus, Thomas argues jurisdiction under CAFA was lacking. See 28 U.S.C. § 1332(d).[4] The district court agreed and granted Thomas's motion. The district court found that the $4.8 million figure did not accurately identify the amount in controversy because Thomas's complaint did not allege that all of the Georgia Credit Protection Plus customers were entitled to relief for the entire amount of their Credit Production Plus fees. The court thus concluded that there was "great uncertainty regarding the amount in controversy and the class size."

A case does not become removable as a CAFA case until a document is "received by the defendant from the plaintiff—be it the initial complaint or a later received paper . . . [that] unambiguously establish[es] federal jurisdiction." Lowery, 483 F.3d at 1213. Once such a document is received, the defendant has thirty days to file the notice of removal. 28 U.S.C. § 1446(b). In other words, a

---

[4] Bank of America, as the party removing the case to the district court, bore the burden of establishing federal subject matter jurisdiction. Evans v. Walter Indus., Inc., 449 F.3d 1159, 1164 (11th Cir. 2006).

defendant may not simply file a notice of removal thirty days after the filing of the complaint unless that document shows that the CAFA's jurisdictional requirements for an action to be deemed a mass action are met. A defendant will generally establish proof of the amount in controversy based on documents received from the plaintiff because a "removing defendant generally will have no direct knowledge of the value of the plaintiff's claims." Id. at 1213 n.63.

Here, the complaint provided no information indicating the amount in controversy or the number of individuals in the alternative classes. Thus, because defendant has not shown the amount in controversy and the sizes of the alternative classes by a preponderance of the evidence, the judgment of the district court is

AFFIRMED.