# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 7, 2016

Lyle W. Cayce
Clerk

No. 15-10955

ARBUCKLE MOUNTAIN RANCH OF TEXAS, INCORPORATED,

Plaintiff - Appellee

v.

CHESAPEAKE ENERGY CORPORATION; CHESAPEAKE OPERATING, INCORPORATED, also known as Chesapeake Operating, L.L.C.; CHESAPEAKE OPERATING, L.L.C., formerly known as Chesapeake Operating, Incorporated; CHESAPEAKE EXPLORATION, L.L.C., as successor by merger to Chesapeake Exploration, L.P.; CHESAPEAKE ENERGY MARKETING, INCORPORATED; TOTAL E&P USA, INCORPORATED,

Defendants - Appellants

Appeal from the United States District Court
for the Northern District of Texas

Before CLEMENT, ELROD, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

The Class Action Fairness Act ("CAFA") confers expansive federal jurisdiction over class actions, with few and narrow exceptions. Here, after the case was removed by the defendants under CAFA, Plaintiff Arbuckle moved to remand the case to state court under the "local controversy exception." The district court granted the plaintiff's motion, remanding the case. The defendants appealed. We REVERSE and REMAND.

No. 15-10955

FACTUAL AND PROCEDURAL BACKGROUND

The defendants are a group of related oil and gas companies who operate producing wells in Johnson and Tarrant Counties, Texas. The defendants had obtained oil and gas leases on commercial and residential property in downtown Fort Worth and adjacent locations. As a result, the defendants leased a substantial number of "third-of-an-acre, quarter-of-an-acre" plots. Allegedly, numerous lessors lost their property through foreclosure subsequent to the execution of their leases. The petition[1] filed in state court claimed the defendants had not always obtained subordinations of prior mortgages to the oil and gas leases, which allegedly caused the mortgaged property to pass free and clear of the leases to those who purchased through foreclosure. The petition further asserts that after foreclosure, the defendants continued to produce from the relevant wells without "undertaking the significant, expensive curative work" to address the ownership changes.

Plaintiff Arbuckle Mountain Ranch of Texas, Inc., and the putative class, claim to be post-foreclosure owners of the disputed oil and gas interests. The putative class allegedly includes "between three thousand and five thousand" members "spread out across the United States." Arbuckle claims the defendants' oil and gas leases automatically terminated upon foreclosure and the defendants' continued operation of these wellheads constituted trespass and conversion.[2]

---

[1] Litigation in Texas state courts begins with a "petition," rather than a "complaint." TEX. R. CIV. P. 45.

[2] Arbuckle's petition includes these claims: (1) request for a declaration that, under Texas law, pre-foreclosure leases terminate when mortgages are foreclosed upon; (2) trespass and a request for an injunction to prevent future trespass; (3) conversion; (4) money had and received; and (5) exemplary damages based on intentional trespass.

No. 15-10955

Arbuckle filed the petition in this putative class action on November 19, 2014, in Texas state court. The defendants removed the case to federal court pursuant to CAFA, 28 U.S.C. §§ 1332(d), 1453. On August 7, 2015, the district court granted Arbuckle's motion to remand the case to Texas state court, holding the local controversy exception applied. We granted the defendants' petition for permission to appeal under 28 U.S.C. § 1453(c)(1).

DISCUSSION

CAFA extends federal jurisdiction to certain large class action lawsuits. *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 569 (5th Cir. 2011). CAFA jurisdiction may be exercised where the proposed class is at least 100 members, minimal diversity exists between the parties, the amount in controversy is greater than $5,000,000, and the primary defendants are not states, state officials, or other government entities. 28 U.S.C. § 1332(d)(2), (5). Here, the parties appear to agree that Section 1332(d)(2)'s requirements are satisfied. Thus, on the face of Arbuckle's petition, CAFA jurisdiction exists.

There are, though, exceptions to CAFA jurisdiction. The district court remanded this case to state court under the local controversy exception. We review a district court's remand *de novo*. *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 796 (5th Cir. 2007).

In enacting CAFA, Congress sought to correct state and local court "[a]buses in class actions" such as "bias against out-of-State defendants" by expanding federal diversity jurisdiction over interstate class actions. Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 2, 119 Stat. 4. "[T]he language, structure, and history of CAFA all demonstrate that Congress contemplated broad federal court jurisdiction with only narrow exceptions." *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 768 F.3d 425,

429 (5th Cir. 2014) (quotation marks omitted). "Congress crafted CAFA to exclude only a narrow category of truly localized controversies, and the exceptions provide a statutory vehicle for the district courts to ferret out the controversy that uniquely affects a particular locality to the exclusion of all others." *Hollinger*, 654 F.3d at 570.

We previously noted that other circuits "recognize that the exception is intended to be narrow, with all doubts resolved in favor of exercising jurisdiction over the case." *Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.*, 655 F.3d 358, 360 (5th Cir. 2011). The dissent questions the authorities cited in *Opelousas. See Evans v. Walter Indus. Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006); *Westerfield v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010).[3] Regardless of such concerns, it is unquestionable that "CAFA greatly expands federal jurisdiction over interstate class action lawsuits." *Hollinger*, 654 F.3d at 569. Therefore, when deciding whether an exception to CAFA removal applies, we adopt the general approach from sister circuits recognized in

---

[3] The dissent argues *Evans* made a "critical error" in its analysis by relying on an inapplicable portion of a Senate Report. We do not rely on legislative history. We point out, though, that our holding is consistent with the cited Senate Report, which recognizes the expansion of federal jurisdiction over class actions. *See* S. REP. NO. 109-14 (2005). The report states that "[b]ecause interstate class actions typically involve more people, more money, and more interstate commerce ramifications than any other type of lawsuit, the [Judiciary} Committee firmly believes that such cases properly belong in federal court." *Id.* at 5. Moreover, in the context of establishing federal CAFA jurisdiction under subsections 1332(d)(5)(A), (d)(5)(B), and (d)(6), the report indicates ambiguities should be resolved in favor of exercising federal jurisdiction. *See id.* at 42 (directing courts to "proceed cautiously before declining federal jurisdiction," and to "err in favor of exercising jurisdiction" when a court is uncertain whether jurisdictional requirements are satisfied). These examples are particularly compelling because, when establishing CAFA jurisdiction, the party seeking *removal* has the burden to prove provisions, including subsections 1332(d)(5) and (d)(6), are satisfied. *See Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d 405, 409 n.3 (5th Cir. 2014). At a minimum, once the burden shifts to the party seeking *remand* as it did in this case, courts must still rule in favor of exercising jurisdiction when faced with uncertainty.

No. 15-10955

*Opelousas*. If the applicability of an exception is not shown with reasonable certainty, federal jurisdiction should be retained.

The local controversy exception states that a federal district court "shall decline to exercise jurisdiction" in the following situation:

(i)    over a class action in which—

(I)    greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II)    at least 1 defendant is a defendant—

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed;

(III)    principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4)(A).

The defendants argue remand is improper because two factors of the local controversy exception are not satisfied: (1) the requirement that the putative class include greater than two-thirds Texas citizens; and (2) the requirement that at least one local defendant's alleged conduct form a

significant basis of Arbuckle's claims.  Both requirements must be met, and so we focus solely on the first: whether the proposed class includes more than two-thirds Texas citizens.  *See Opelousas*, 655 F.3d at 361.  For the reasons that follow, we hold Arbuckle has failed to demonstrate the local controversy exception applies.

### I.      Conflicting Class Definitions

This jurisdictional conflict arises because the parties disagree over how to construe the class definition in Arbuckle's petition.  Arbuckle contends the class includes *only current* owners of mineral interests, which we will call "the narrow definition."  The defendants, however, contend the class includes *all current and former* owners of mineral interests since the foreclosure actions in 2004, "the broad definition," of course.

The class definition issue is critical to determine whether the local controversy exception applies.  Arbuckle has presented sufficient evidence to show that, under the narrow definition, the proposed class consists of over two-thirds Texas citizens.[4]  Arbuckle has failed, though, to present any evidence about those owners who purchased mineral interests post-foreclosure but have since sold or otherwise relinquished their interests.  During a deposition of Arbuckle's class-citizenship expert witness, the witness conceded that he had not examined the citizenship of interim owners.  It was Arbuckle's burden, as

---

[4] The defendants claim Arbuckle presented "unreliable" expert testimony in assessing the citizenship of the putative class under the narrow class definition.  The defendants did not previously challenge Arbuckle's proof of citizenship under the narrow definition in their petition for permission to appeal.  Moreover, the argument is relegated to a footnote in the defendants' brief.  Arguments subordinated in a footnote are "insufficiently addressed in the body of the brief," and thus are waived.  *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 n.7 (5th Cir. 2003).  Our finding of waiver, even though we express it in a footnote, is nonetheless dispositive.

the party seeking remand, to "prove the statutory citizenship requirement by a preponderance of the evidence." *Preston*, 485 F.3d at 797. Therefore, if the broad definition controls, Arbuckle has failed to satisfy its burden of proof in the absence of necessary class citizenship evidence.

Arbuckle's petition includes the two definitions of the putative class in separate paragraphs. The narrow definition appears in paragraph 14:

> Plaintiff and all class members are *currently mineral interest owners* (and in almost all instances also owners of the surface estate) in Johnson and Tarrant Counties, Texas. Some members of the class, and numerous third party lenders (collectively "lenders"), were prior mortgagees, i.e. mortgage owners, with valid, properly recorded mortgages on properties, and mineral interest, ("property" or "properties") whereby those lands and mineral interests were pledged as collateral on loans to lenders ("mortgages").

The broad definition appears in paragraph 23, which is the formal description of the class that the plaintiff wishes to certify:

> Plaintiff seeks and requests the certification of a class ("the Class" or "Class Members") comprised of the following:
>
> All non-excluded persons or entities,[5] in Johnson and Tarrant Counties, Texas, *who are, or were*, since 2004, purchasers of property, including mineral interests, at foreclosure, of valid, prior-recorded mortgages on properties, or owners who took title by, through or under such a purchaser, from Chesapeake and Total produced gas and other minerals . . . .

The district court carefully analyzed these conflicting definitions on the record, eventually adopting the narrow class definition in paragraph 14. The

---

[5] The term "non-excluded persons or entities" is defined in paragraphs 23 and 25 of the petition. Neither definition sheds any light on the questions we confront.

court characterized paragraph 23's broader definition as a mere "pleading error," and held "the totality of the pleadings makes it clear that [Arbuckle is] talking about current owners." We now perform our own review.

Paragraph 14 states "all class members are currently mineral interest owners." In conflict with that, paragraph 23 sets out that *the Class* and *Class Members* include "[a]ll non-excluded persons or entities . . . who are, or were, since 2004, purchasers of property . . . or owners who took title by, through or under such a purchaser." Paragraph 23, reasonably read, includes *all* non-excluded purchasers since 2004: the initial purchasers at foreclosure who no longer are owners; purchasers from the original or later purchasers who no longer are owners; and the current owners no matter when they acquired their interests on tracts that passed through foreclosures.[6]

The two paragraphs are in direct conflict with one another. Arbuckle says the narrow definition controls on the basis that paragraph 14's definition appears earlier in the petition. We find no legal authority supporting an earlier-in-placement rule for interpreting pleadings. More important than location is purpose. Paragraph 23, containing the broad definition, begins by saying that "Plaintiff seeks and requests the certification of a class ('the Class' or 'Class Members') comprised of the following," and then gives its definition. Thus, the broad definition appears in the paragraph that formally identifies

---

[6] The dissent suggests paragraph 23 may be nothing more than a list of "ways that a current owner might have acquired his mineral interest." A significant problem with that view is the use of the word *all* at the start of the paragraph. If the paragraph said the Class is comprised of "persons or entities" who acquired mineral interests in a specified manner, that would imply some, but not all, qualified persons or entities are actually members of the class. Paragraph 23, however, states the Class is comprised of *all* non-excluded persons or entities who satisfy the listed qualifications, not a subset of those who qualify. Moreover, paragraph 23 is not presented as an afterthought, *i.e.,* a section which illuminates by examples an earlier class definition. It explicitly identifies the class that is to be certified.

the class.  If either paragraph is to be given greater weight, it ought to be the paragraph that contains what the plaintiff has declared is the class definition.

Arbuckle also argues paragraph 23 should be subordinate because its language is murky in relation to paragraph 14.  We find no ambiguity in saying the class includes "all" who were purchasers since 2004 or acquired title through such a purchaser.

Finally, Arbuckle argues that paragraph 23 is not in conflict with paragraph 14.  Instead, it applies only to current owners because "all current owners *were* purchasers at some point in time."  Arbuckle's proposed interpretation overlooks the beginning of paragraph 23, which expressly includes *all* purchasers, not merely those who still own property.

We find paragraph 23 has the stronger claim to being authoritative.  We now look at the petition as a whole.

### II.    *Contextual Clues*

Under the federal rules, we construe pleadings in their entirety when assessing their sufficiency.  *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).  Likewise, under Texas rules, pleadings must give an opponent fair notice of the plaintiff's claims after looking at the allegations as a whole.  *See, e.g.*, *Dallas Area Rapid Transit v. Morris*, 434 S.W.3d 752, 760 (Tex. App.—Dall. 2014, no pet.).  We may perform a similar review of the entire pleading when assessing CAFA jurisdiction.  Still, in determining the class definition, we are limited to those allegations set out in the plaintiff's petition at the time of removal.  The "application of the local controversy exception depends on the pleadings at the time the class action is removed."  *Cedar Lodge Plantation*, 768 F.3d at 426.  Congress intended to confer broad federal jurisdiction through CAFA, and so "[a]llowing [a plaintiff]

to avoid federal jurisdiction through a post-removal amendment would" conflict with the policy underlying CAFA. *Id.* at 429.

Reviewing Arbuckle's petition as a whole, we find at most one other paragraph that supports the narrow definition in paragraph 14 and is inconsistent with the broader language of paragraph 23. It is found in the part of the petition identifying the five causes of action, which are labeled as "Counts." Only the language in one paragraph, in one count, supports the view that only current owners are in the class. Alleging trespass in Count 3, Arbuckle claims "Plaintiff, and the Class, *is* the rightful owners of the mineral estates of the Properties by virtue of a valid foreclosure action." Arbuckle's employment of the present tense (even if also the singular verb) supports that Arbuckle intended its class to include only current owners.

The dissent finds further support for the narrow definition in paragraphs 42 and 43, which are found in Count 3. We disagree. In paragraph 42, Arbuckle alleges that the defendants' acts of trespass "have caused, *and continue to cause* damage to Plaintiff and the Class." The dissent contends this sentence could be interpreted to mean that all proposed class members continue to experience damage. The stated language, however, is not at all inconsistent with the broad definition. It might just as easily mean damage was previously caused to some class members and continues to occur for others. Further, in paragraph 43, Arbuckle "seeks injunctive relief for themselves and the Class" to prevent further acts of trespass. Conceivably, injunctive relief for all class members implies that all class members continue to suffer acts of trespass. True, the proposed class may seek different remedies: former owners will seek money damages for past harms, and current owners will seek money damages for past *and current* harms plus injunctive relief. The district court may eventually have to decide whether the class can and/or must be split into

subclasses pursuant to Federal Rule of Civil Procedure 23(c)(4).  Still, "the fact that a class is overbroad and should be divided into subclasses is not in itself a reason for refusing to certify the case as a class action," let alone a reason to divest a federal court of jurisdiction.  *See Culver v. City of Milwaukee*, 277 F.3d 908, 912 (7th Cir. 2002).

In none of the other four Counts is there support for either class definition.  Count 1, seeking termination of the leases, asserts that each class member has an interest under a deed or contract, and that the prior oil and gas leases do not bind the member.  Count 2 seeks an injunction and an accounting for production taken under invalid leases, and an order that proceeds from future production go to the class.  Count 4 alleges conversion, and claims that class members are the rightful owners of proceeds of production.  Finally, Count 5 claims that defendants have unpaid royalties due to the class.   None of these remaining Counts shed any light on the correct class definition.

The petition is ambiguous.  Arbuckle asks us to rely on one of our recent unpublished opinions as authority that a narrow definition trumps a broad definition.  *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, No. 14-31355, 2015 WL 5771919 (5th Cir. Oct. 2, 2015).  The case interprets the scope of a settlement class to determine whether a new claim is precluded under the terms of former settlement agreements.  On appeal, we noted that the past settlement agreements contained conflicting language about the scope of the settlement classes, defining the class broadly in parts and narrowly in others.  *Id.* at *3.  We noted that, when reviewing the scope of a settlement agreement, "the 'Class Member' definitions are not considered in isolation; instead they are to be considered in the context of the agreements as a whole." *Id.* at *2.  We then relied on other provisions in the settlement agreement to

show the class was intended to be limited. These other provisions, governing the allocation of settlement funds, could not be properly effectuated under the defendants' proposed broader definition.

*Chinese-Manufactured Drywall* does not affect our analysis. First, it involves interpretation of a settlement agreement, *i.e.,* a contract, not pleadings. More importantly, it stands for the uncontroversial idea that context matters. We should look to the entire relevant document when interpreting ambiguous class size definitions. That guiding principle does not dictate how this panel should resolve the present action, where two equally plausible class size definitions are included in the same petition.

Finally, that opinion deemed it "nonsensical" to find the class included members who were "never entitled to a benefit under" the settlement agreements: "It spurns simple reasoning to require individuals to opt out of a settlement agreement under which they were never entitled to compensation." *Id.* at *3. Conversely, in our case, Arbuckle's petition seeks money damages for all production "since the later of 2004 or from the first production," which if awarded would benefit both former and current owners.

We summarize the conflicting indications in Arbuckle's petition. The formal class definition includes "all" those who were purchasers of interests as a result of foreclosure. A different part of the petition limits the class to current owners. One paragraph in one of the causes of action is written in terms that seem reasonably limited, primarily, but not entirely, to current owners. The other causes of action include no self-contained limitations and would equally apply to the broad or narrow definition.

No. 15-10955

### III.    *Ambiguity and the Rule Favoring Federal Jurisdiction*

A party seeking removal must establish federal jurisdiction.  *See Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 84–85 (5th Cir. 2013). When CAFA's basic requirements are satisfied, as they are in this case, and where a party seeks remand under an exception to federal jurisdiction, that party "must prove that the CAFA exceptions to federal jurisdiction divest the district court of subject matter jurisdiction."  *Preston*, 485 F.3d at 797. Underlying our analysis is our need to resolve lingering doubts in favor of exercising federal jurisdiction when an exception to jurisdiction is asserted. *See Opelousas*, 655 F.3d at 360.

Arbuckle's petition contains two conflicting class definitions.  After reviewing Arbuckle's petition, the parties' briefs, and the record, we have no basis to conclude the class is only of current owners, or conversely that it covered all post-foreclosure owners including interim owners.  Further, plaintiffs concede there is no evidence that, under the broad definition, over two-thirds of the class are Texas citizens.

Because the class that the petition at the time of removal sought to have certified is not clearly limited to current owners, and with inadequate evidence of the citizenship of the interim owners in the broader class, Arbuckle has not proven that the exception for local controversies applies.

We REVERSE the judgment of the district court remanding this case to state court.  The case is REMANDED to district court, and we DIRECT that the case be reinstated on that court's docket.

No. 15-10955

JENNIFER WALKER ELROD, Circuit Judge, dissenting:

The majority opinion resolves this case by adopting a new rule: "when deciding whether an exception to CAFA removal applies, . . . [i]f the applicability of an exception is not shown with reasonable certainty, federal jurisdiction should be retained." The law of our circuit does not require such a presumption in favor of federal jurisdiction, nor should it. Moreover, if the facts of this case do not satisfy the local controversy exception "with reasonable certainty," then the majority's presumption is a strong one indeed. Because I agree with the district court's determination that the local controversy exception required remand of this case to state court, I respectfully dissent.

Among other limitations, CAFA's local controversy exception applies only when "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(I). Arbuckle, the party seeking remand, bears the burden to "prove the statutory citizenship requirement by a preponderance of the evidence." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.* (*Preston I*), 485 F.3d 793, 797 (5th Cir. 2007). As the majority opinion explains, whether the local controversy exception is satisfied depends on how the proposed class is defined. Under the "narrow class definition" (current mineral interest owners), Arbuckle has adduced sufficient evidence that greater than two-thirds of the proposed class members are citizens of Texas, where the case was originally filed.[1] Under the "broad class definition" (current and former mineral interest owners since 2004), it has not.

---

[1] Along with the majority opinion, I would hold that defendants-appellants have waived any challenge to Arbuckle's proof of citizenship under the narrow class definition.

14

No. 15-10955

In discerning the proposed class, we must be guided by two principles. First, "the application of the local controversy exception depends on the pleadings at the time the class action is removed." *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 768 F.3d 425, 426 (5th Cir. 2014). Second, when CAFA jurisdiction depends on an analysis of state court pleadings, we read the pleadings as the state court would read them. *See Braud v. Transport Serv. Co. of Ill.*, 445 F.3d 801, 803 (5th Cir. 2006) (holding, for purposes of CAFA's requirement that a lawsuit have been "commenced" in state court on or after CAFA's enactment date, that "when an action is commenced in state court is determined based on the state's own rules of procedure," not Federal Rule of Civil Procedure 3).

Because state law governs our construction of the pleadings, a word on Texas's pleading rules is in order. When a plaintiff files a petition in Texas state court, the sufficiency of that petition is not judged against the federal pleading standard codified in Federal Rule of Civil Procedure 8(a)(2) and expounded in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rather, the petition must simply be "sufficient to give fair notice of the claim involved." Tex. R. Civ. P. 47(a). In applying the fair notice standard, Texas courts "consider the petition in its entirety and construe it as favorably as possible" to the pleader. *Ealey v. Ins. Co. of N. Am.*, 660 S.W.2d 50, 52 (Tex. 1983). Granted, we are deciding between two interpretations of Arbuckle's petition rather than judging its sufficiency. But our interpretive process must be informed by that backdrop. Moreover, Texas appellate courts tasked with discerning a proposed class from a trial court record do not constrain themselves to a formalistic examination of the portion of the petition that purports to define the class. *See Intratex Gas Co. v. Beeson*, 22 S.W.3d 398, 408 (Tex. 2000) (declining to adopt an alternate class definition on appeal after rejecting the definition certified by the trial

15

court because, even after reviewing "the pleadings and the record of the class-certification proceedings," "the parameters of the proposed new class are not easily identified"). With that context in mind, our task is to examine the pleadings as a whole and decide between the two definitions of the proposed class. The district court, after briefing and a hearing, concluded that "the totality of the pleading makes it clear that [Arbuckle was] talking about current owners." I agree.

The strongest evidence for the narrow class definition appears in paragraph 14 of Arbuckle's petition: "Plaintiff and *all class members are currently mineral interest owners* (and in almost all instances also owners of the surface estate) in Johnson and Tarrant Counties, Texas." (emphasis added). That provision unambiguously limits the proposed class to current owners. The only evidence for the broad class definition appears in paragraph 23 and is much less clear:

> Plaintiff seeks and requests the certification of a class . . . comprised of the following: All non-excluded persons or entities, in Johnson and Tarrant Counties, Texas, who *are, or were, since 2004*, purchasers of property, including mineral interests, at foreclosure, of valid, prior-recorded mortgages on properties, or owners who took title by, through or under such a purchaser, from which Chesapeake and Total produced gas and other minerals . . . .

(emphasis added). Focusing on the use of both present and past tense, defendants-appellants and the majority conclude that paragraph 23 proposes a class encompassing both current and former mineral interest owners.

That reading of paragraph 23 is not obvious. The "are, or were, since 2004" language immediately precedes a description of "purchasers," not owners, and reading the paragraph to describe persons who "are, or were, since

2004, . . . *owners*," as defendants-appellants would do,[2] requires breezing through five commas in addition to the ones I have reproduced. The majority opinion does not undertake that splicing exercise but nevertheless concludes that both current and former owners are covered. Under the majority's reading of paragraph 23, the group of "[a]ll non-excluded persons or entities, in Johnson and Tarrant Counties, Texas, who are, or were, since 2004, purchasers of property, including mineral interests," necessarily encompasses "*all*" non-excluded purchasers, including those who no longer own the mineral interests. But even that reading leaves awkwardness. Why does the provision frame itself around "persons or entities in Johnson and Tarrant Counties, Texas," rather than *property* in those counties?[3] One explanation is that paragraph 23 simply catalogs the ways that a current owner might have acquired his mineral interest: by purchasing the interest at a foreclosure sale at some point since 2004, or by acquiring it from somebody else who did so. A contorted reading, perhaps, but no reading of paragraph 23 leaves all of its parts intact. The majority opinion may not find paragraph 23 ambiguous, but I do.

Fortunately, we resolve ambiguities at the level of the petition as a whole rather than within any one paragraph. Though paragraph 23 is ambiguous when read alone, paragraph 14's crystal-clear limitation of the class to current owners illuminates the petition's true class definition: the narrow one. In giving effect to paragraph 14, we need attach little significance to its placement in the petition's "facts" section rather than among the "class action allegations." Texas pleading rules "reject[] any requirement that a sharp,

---

[2] Defendants-appellants advanced this reading in both of their briefs but abandoned it at oral argument.

[3] This language plausibly limits the proposed class to *citizens* of Johnson and Tarrant Counties, a class definition under which the two-thirds requirement would be met on the face of the petition. But Arbuckle does not argue that its proposed class is thus limited.

intelligible, and consistent distinction be drawn between 'evidentiary allegations,' allegations of 'ultimate facts,' and allegations of 'legal conclusions.'" 2 Roy W. McDonald & Elaine A. Grafton Carlson, *Texas Civil Practice* § 7:4(a), Westlaw (database updated Dec. 2015); *see also* Tex R. Civ. P. 45(b) ("That an allegation be evidentiary or be of legal conclusion shall not be grounds for objection when fair notice to the opponent is given by the allegations as a whole . . . ."). The district court chalked paragraph 23 up to "pleading error," but we need not even go that far; paragraph 23 is ambiguous, and the petition as a whole clarifies that the proposed class includes only current mineral interest owners.

Even if the majority opinion is correct that paragraph 23 unambiguously supports the broad definition and that paragraphs 14 and 23 are consequently in direct conflict, other provisions of the petition—to which we must look in resolving any conflict—support only the narrow definition. Paragraph 40 provides that "Plaintiff, and the Class, *is* the rightful owners of the mineral estates of the Properties by virtue of a valid foreclosure action." (emphasis added). The use of the present tense implies current ownership, as the majority opinion concedes. Shortly thereafter, paragraph 42 alleges that "multiple acts of trespass by Defendants have caused, and continue to cause damage to Plaintiff and the Class." An act of trespass could "continue to cause damage" only to a current mineral interest owner. The majority opinion dismisses paragraph 42 on the grounds that it could be read to allege ongoing harms against some class members but not others. But that is not the most natural reading, and so paragraph 42 lends at least some credence the narrow class definition.

Finally, paragraph 43 of the petition requests injunctive relief as to the entire class, which makes sense only if the class is composed entirely of current

mineral interest owners. The majority opinion posits that paragraph 43 does not preclude a class composed of both current and former owners because a mismatch between the class definition and the relief sought is not "a reason to divest a federal court of jurisdiction," even if the mismatch will eventually require the creation of subclasses. But that logic falters here, where federal jurisdiction depends on discerning the true class definition and the narrow option cures the mismatch, making sense of paragraph 43's request for injunctive relief as to the entire class. In sum, examining the petition as a whole does not reveal "competing contextual clues" that collectively shed no light on the conflict between narrow and broad class definitions in paragraphs 14 and 23. The context clues all support the narrow definition—current mineral interest owners.

The majority opinion is most troubling when it enshrines a presumption against the local controversy exception in this circuit's precedent. Quoting our previous decision in *Opelousas General Hospital Authority v. FairPay Solutions, Inc.*, 655 F.3d 358 (5th Cir. 2011), the majority observes that "other circuits 'recognize that the exception is intended to be narrow, with all doubts resolved in favor of exercising jurisdiction over the case.'" It is important to note that *Opelousas* did not adopt, rely on, or further discuss that "all doubts" rule beyond noting that "[o]ther courts" have adopted it. 655 F.3d at 360 (citing *Evans v. Walter Indus. Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006); *Westerfield v. Indep. Processing, LLC.*, 621 F.3d 819, 822 (8th Cir. 2010)). Nevertheless, today's majority opinion "adopts th[at] general approach," ultimately deciding the case in accordance with "the need to resolve lingering doubts in favor of exercising federal jurisdiction." Per the majority opinion, "[i]f the applicability of an exception is not shown with reasonable certainty, federal jurisdiction should be retained." This is a course we should not take.

First, we have previously held that an exception to CAFA jurisdiction was satisfied despite some uncertainty. In *Preston v. Tenet Healthsystem Mem. Med. Ctr., Inc.* (*Preston II*),[4] we endorsed a district court's "credible estimate" as to the size of the proposed class for purposes of evaluating the citizenship requirement in CAFA's discretionary jurisdiction exception, noting that "it is unnecessary for the district court to . . . determin[e] the exact class size to an empirical certainty." 485 F.3d 804, 820–22 (5th Cir. 2007); *see also id.* at 817 (approving district court's "extrapolation" that affidavits of some proposed class members "were probably representative of many other proposed class members"); *Preston I*, 485 F.3d at 801 (holding that a district court must make a "credible estimate" as to the citizenship of proposed class members for purposes of the local controversy exception). The majority opinion's requirement that CAFA exceptions be proven "with reasonable certainty" is difficult to reconcile with these prior holdings.

Second, of the "other courts" referenced by *Opelousas* that resolve "all doubts" in favor of federal jurisdiction, neither's reasoning is persuasive. The Eleventh Circuit's analysis contains a critical error. The *Evans* case reached its conclusion that "all doubts" regarding the local controversy exception should be "resolved 'in favor of exercising jurisdiction over the case'" by quoting a portion of CAFA's legislative history addressing the amount-in-controversy requirement, *not the local controversy exception. See* 449 F.3d at 1163 (quoting

---

[4] *Preston I* and *Preston II*, though consolidated and decided by the same panel on the same day, were separate cases against different medical facilities concerning injuries suffered in connection with Hurricane Katrina. *Preston I*, 485 F.3d at 796 n.1; *Preston II*, 485 F.3d at 809 n.1. Though *Preston II* was decided under CAFA's discretionary jurisdiction exception, § 1332(d)(3), rather than the local controversy exception, the court clarified that "the sufficiency of the evidence necessary to satisfy the citizenship requirements remains consistent" between the two. 485 F.3d at 812.

S. Rep. No. 109-14 at 42 (2005)). This is an error that we should not reproduce, regardless of the propriety of consulting the relevant portions of a statute's legislative history. The Eighth Circuit's analysis is also unpersuasive: the *Westerfield* case makes too much of the plaintiff's evidentiary burden to prove the local controversy exception. 621 F.3d at 822. The local controversy exception is surely narrow, and the party seeking remand has the burden of establishing its application. But that does not mean that "all doubts"— whether evidentiary, legal, existential, etc.—must be resolved in favor of federal jurisdiction. Rather, Arbuckle's burden is purely an evidentiary one, the standard of proof is a mere preponderance of the evidence, and the parties agree that the state court petition is the only piece of evidence relevant to discerning the proposed class. Arbuckle having produced that petition, it is our task to determine the petition's legal significance without the aid of any doubt-resolving presumption in favor of federal jurisdiction. The Supreme Court has recognized that "no antiremoval presumption attends cases invoking CAFA," *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), but we should not go further and announce a *pro-removal* presumption, whether for CAFA as a whole or as to the local controversy exception.

Even if CAFA does require that courts "resolve lingering doubts" against application of the local controversy exception, considerations of federalism and comity are not jettisoned entirely in the CAFA context. *See Hood ex rel. Mississippi v. JP Morgan Chase & Co.*, 737 F.3d 78, 84–85 (5th Cir. 2013); 14AA Charles Alan Wright, et al., *Federal Practice & Procedure* § 3705.1, Westlaw (database updated Apr. 2015). Only after fully exhausting the judicial toolkit with which we typically confront a difficult interpretive problem should we resign to having a "doubt" that must be resolved in favor of federal

jurisdiction.[5]  This is not a case in which we have "no basis" to pick one interpretation or the other, as the majority opinion suggests.  Because the petition lends more support to the narrow class definition when read as a whole, we should adopt that definition as the district court did.  Arbuckle has established the local controversy exception "with reasonable certainty," if such certitude is indeed required.  If this case nevertheless presents the sort of "lingering doubt" that must be resolved in favor of federal jurisdiction, then the majority opinion has, in effect, adopted a broad-reaching presumption against the local controversy exception that extends beyond what our court's and the Supreme Court's precedents require.

Reading Arbuckle's Texas petition as a whole, I would conclude that the narrow class definition is the correct one and that Arbuckle has consequently met its burden to show that two-thirds of the proposed class members are Texas citizens so as to trigger the local controversy exception.[6]  I would affirm the district court's order remanding this case back to state court.  Accordingly, I respectfully dissent.

---

[5] This proposition mirrors the approach courts take when applying the familiar *Chevron* framework for reviewing administrative agencies' statutory interpretations; only after "employing traditional tools of statutory construction" to determine whether "Congress had an intention on the precise question at issue" does a court defer to a reasonable agency interpretation.  *Chevron, U.S.A., Inc. v. Nat. Res. Defense Council*, 467 U.S. 837, 843 n.9 (1984).

[6] The remaining requirements of the local controversy exception, save one, are uncontested on appeal.  The one area of dispute is the requirement that there be an in-state defendant "whose alleged conduct forms a significant basis for the claims asserted."  28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb).  I do not analyze this issue in full because the majority does not reach it, but I would hold that defendant Total E & P USA, Inc., a Texas citizen, satisfies the "significant basis" requirement.  *See Williams v. Homeland Ins. Co. of N.Y.*, 657 F.3d 287, 291–92 (5th Cir. 2011).